**Willie M. WALKER, Willie Rhoades and Bobbie P. Lowery, Plaintiffs,**

v.

**The JIM DANDY COMPANY, Defendant.**

Civ. A. No. 74–AR–874–S.

United States District Court, N.D. Alabama, S.D.

March 25, 1983.

Addendum to Opinion March 29, 1983.

Susan W. Reeves, Reeves & Still, Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiffs.

J. Richard Walton, Chris Mitchell, Carol Sue Nelson, Constangy, Brooks & Smith, Birmingham, Ala., and Constangy, Brooks & Smith, Atlanta, Ga., for The Jim Dandy Co.

## MEMORANDUM OPINION

ACKER, District Judge.

On August 28, 1974, Willie M. Walker (Walker) filed a complaint alleging racial discrimination against him by The Jim Dandy Company (Jim Dandy). He also sought to represent a putative class of black discriminatees. In the same complaint Willie Rhoades (Rhoades) and Bobbie P. Lowery (Lowery) complained of sex discrimination against them in refusing to hire them and sought to represent the class of those similarly situated.

On May 25, 1977, Honorable Frank H. McFadden entered the following order:

This cause comes before the Court on the parties' Rule 23(c)(1) motions. Having considered the motions, the supporting materials, and the oral presentations of counsel, the Court is of the opinion that *plaintiffs have not established that the class is so numerous that joinder of all members is impractical or that there are questions of law or fact common to the class.*

Accordingly, it is *ORDERED, ADJUDGED and DECREED that this cause not be maintained as a class action.* (emphasis supplied).

On June 13, 1978, after a hearing on the merits, Judge McFadden entered final judgment against all three plaintiffs. As of June 13, 1978, then, except for the possibility of an appeal, the case had been adjudicated against all three plaintiffs in all respects.

Walker did not appeal from the adverse class action determination. He only appealed from the final decree insofar as it found him barred by certain statutes of limitations. He was successful in his appeal, and Walker's individual claim has been set for trial on the merits. Rhoades and Lowery appealed both from the adverse finding on their individual claims and from the adverse determination on class certification. This opinion only deals with the Rule 23, F.R. Civ.P. issues presented by Rhoades and Lowery and mandated for reconsideration by the Fifth Circuit in its opinion dated March 13, 1981 in *Walker v. Jim Dandy Company,* 638 F.2d 1330 (5th Cir.1980). A careful reading of the Fifth Circuit opinion is necessary in order to understand exactly what is required of this Court and where the Court and the parties find themselves.

### WHAT DID THE FIFTH CIRCUIT SAY AND WHAT DID IT NOT SAY?

FIRST: It must be understood that the Fifth Circuit expressly affirmed Judge McFadden's finding that Rhoades and Lowery, the two would-be representatives of the class of putative female discriminatees, have no individual claims against Jim Dandy.

SECOND: It must be understood that the Fifth Circuit fully acknowledges that a district court has broad discretion under Rule 23 in its evaluation of the various criteria bearing on class certification, and may only be reversed for an abuse of that discretion.

THIRD: It must be understood that the Fifth Circuit did not REVERSE Judge McFadden's refusal to certify the female class but instead simply REMANDED for "reconsideration" the question of whether or not a class should be certified for "reconsideration". The Fifth Circuit was precise in limiting its mandate in this regard. It said:

... thus we are reluctant to find an abuse of discretion and directly overrule its [the district court's] order. Rather we instruct the court to *reconsider* its finding. (emphasis supplied).

Conspicuously, the Fifth Circuit did not suggest that Judge McFadden receive any further evidence on the class action question. It did not remand for trial *de novo* on this question. The word "reconsideration" only implies another look by the district court at the materials previously available to the district court. Furthermore, nothing which the Fifth Circuit said indicates that it contemplated on remand the introduction of a new would-be class representative bearing new credentials different from those of Rhoades and Lowery.

FOURTH: The Fifth Circuit specifically disagreed with the position which Jim Dandy had taken before Judge McFadden, namely, that a lack of merit in Rhoades' and Lowery's individual claims is to be considered (or reconsidered?) in determining the adequacy of their representation under Rule 23. On this point the Fifth Circuit relied largely on *United States Parole Com'n v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). Based on *Geraghty,* and other cases, the Fifth Circuit said as a crucial part of its holding:

> ... it would be inappropriate for the district court to dismiss the class complaint because the plaintiffs' individual claims have been adjudicated ... (emphasis supplied).

638 F.2d at 1335

### WHAT HAS HAPPENED SINCE THE FIFTH CIRCUIT OPINION?

In addition to the careful limitations in the Fifth Circuit mandate itself, there are three unique things which have occurred since its opinion.

FIRST: Judge McFadden is no longer on the bench. Judge McFadden cannot personally articulate his rationale for the legal conclusions contained in his order of May 25, 1977, denying class certification. Instead, the case has been reassigned to the undersigned.

SECOND: On October 1, 1981, seven months after the Fifth Circuit opinion, the Eleventh Circuit came into being.

THIRD: On June 14, 1982, fourteen months after the Fifth Circuit opinion, the Supreme Court decided *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). This fact has more significance than anything else in the case.

### THE EFFECT OF FALCON

The single issue here presented can only be decided by a dual application of the law-of-the-case and of the lesson of *Falcon* to the ultimate facts found by Judge McFadden and affirmed by the Fifth Circuit. As has been indicated *supra,* the law-of-the-case establishes that Rhoades and Lowery do not have personal causes of action against Jim Dandy. As will be discussed *infra, Falcon* establishes that persons without claims themselves cannot represent a class who may have claims. In combination, these two facts force a conclusion against Rhoades and Lowery on the class action question, and obviate any necessity for second guessing Judge McFadden or for exegesis of his conclusions of lack of numerosity and of commonality.

It is completely understandable why the Fifth Circuit reached the conclusion which it reached. It employed the reasoning of *Geraghty, supra,* of *Satterwhite v. City of Greenville,* 634 F.2d 231 (5th Cir.1981), after remand by the Supreme Court, 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980), and of *Deposit Guarantee National Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). *Geraghty,* in which, incidentally, there was a vigorous dissent by four justices, was effectively limited to its facts by *Falcon* after the Fifth Circuit opinion of March 13, 1981. With the *Geraghty* dissenters now in the majority, *Falcon* speaks to the precise and fundamental issue on which the Fifth Circuit expressed itself on the appeal from Judge McFadden. The Fifth Circuit flatly said that a person without an individual claim may still be a class representative. Absolutely to the contrary, the Supreme Court in *Falcon* held:

> We have repeatedly held that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight System, Inc. v.*

*Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (quoting *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929–2930, 41 L.Ed.2d 706.) In *East Texas Motor Freight,* a Title VII action brought by three Mexican-American city drivers, the Fifth Circuit certified a class consisting of the trucking company's black and Mexican-American city drivers allegedly denied on racial or ethnic grounds transfers to more desirable line-driver jobs. We held that the Court of Appeals has "plainly erred in declaring a class action." 431 U.S., at 403, 97 S.Ct., at 1896. *Because at the time the class was certified it was clear that the named plaintiffs were not qualified for line-driver positions, "they could have suffered no injury as a result of the allegedly discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury." Id.,* at 403–404, 97 S.Ct., at 1897.

Our holding in *East Texas Motor Freight* was limited; we noted that "a different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives." *Id.,* at 406, n. 12, 97 S.Ct., at 1898, n. 12. We also recognized the theory behind the Fifth Circuit's across-the-board rule, noting our awareness "that suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs," and that "[c]ommon questions of law or fact are typically present." *Id.,* at 405, 97 S.Ct., at 1898. In the same breath, however, we reiterated that *"careful attention to the requirements of Fed.Rule Civ. Proc. 23 remains nonetheless indispensable"* and that the "mere fact that a complaint alleges racial or ethnic discrimination does not in itself insure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination." *Id.,* at 405–406, 97 S.Ct., at 1898.

We cannot disagree with the proposition underlying the across-the-board rule—that racial discrimination is by definition class discrimination. But *the allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified.* Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) *the existence of a class of persons who have suffered the same injury as that individual,* such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. (emphasis supplied).

102 S.Ct. at 2370.

The Supreme Court in *Falcon* is saying as clearly as can be said that a person who himself or herself is not injured cannot represent a class of injured persons. The Eleventh Circuit quickly perceived the significance of *Falcon* when on January 24, 1983, in *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, at p. 928 in footnote 6 the Eleventh Circuit said:

The precedential value of *Falcon* [the first opinion] is significantly diminished in light of the Supreme Court's second opinion. While the Court did not discuss the aspect of the Fifth Circuit opinion dealing with the jurisdictional claim, *the case nevertheless limits the application of "across-the-board" suits based on general allegations of pervasive discriminatory policies. In Falcon, the Supreme Court addressed the propriety of maintaining an "across-the-board" class under the prerequisites of Federal Rule of Civil Procedure 23. The Court cautioned that certification of an "across-the-board" class would be overbroad if the plaintiff who sought to be class representative was not part of the class and possessed of the same interest and suffering from the*

*same injury as the class members.* The Court refused to allow a complaint alleging discrimination in promotion to form the basis for certifying a class "composed of Mexican-American persons who are employed or might be employed [by the Telephone Company] who have been and who continue to be or might be adversely affected by the practices complained of herein." It held that Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation effectively limit the class claims to those fairly encompassed by the named plaintiffs' claims. The Court further required that a plaintiff proffer more specific or "significant proof" to establish the prerequisites for class certification as well as his ability to be a proper class representative.

After *Falcon,* the end result is that even under a liberal interpretation of the "like or related" rule, the opportunity for a plaintiff to establish a class of individuals alleging "across-the-board" discrimination is significantly limited by the requirements of Rule 23. (emphasis supplied)

There is no way to reconcile the words "it would be inappropriate ... to dismiss the class complaint because the plaintiffs' individual claims have been adjudicated" (638 F.2d at 1335), with the words, "they could have suffered no injury as a result of the alleged discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury" (102 S.Ct. at 2370). The latter words wipe out the former.

■ The question therefore arises: is the district court limited in what it may do by the language of the Fifth Circuit opinion, or, if the mandate conflicts with a clear subsequent expression by the highest court in the land, is the district court bound by this more recent expression of the law? Under the peculiar procedural circumstances here appertaining, this Court believes that *Falcon* is dispositive, and that this Court, and the Eleventh Circuit, are bound by the clarion instruction of the Supreme Court in *Falcon,* particularly where the word "reconsideration", as used by the Fifth Circuit, necessarily indicates both an admonition that the district court take another look at the evidence already introduced on the matter to be reconsidered, and that the issue be reconsidered in the issue in light of any modification in the controlling law enunciated by the Supreme Court before or during the reconsideration.

Only Judge McFadden and God know exactly what reasoning process Judge McFadden used to arrive at his findings of a lack of numerosity and commonality. Neither Judge McFadden nor God has revealed himself to the writer of this opinion, a fact which has left the author with the limited tools of careful reading, extrapolation, and some soul searching.

■ From reviewing and analyzing the materials available to Judge McFadden, this Court is convinced that Judge McFadden was largely influenced by Jim Dandy's argument that persons having narrow individual claims, such as Rhoades and Lowery, who could only be heard to complain that they were not hired for supervisory positions, cannot represent a larger class of potential discriminatees. Whatever he may have called it, Judge McFadden found an absence of nexus. Judge McFadden's reasoning, of course, becomes even more persuasive when it was determined that Rhoades and Lowery had and have no claims whatsoever and are adjudged not to be the victims of the particular discrimination they complain of. It is therefore the finding of this Court, as a matter of fact and law, that Rhoades and Lowery cannot represent a class including female applicants for employment and employees of Jim Dandy, because their individual claims have totally disappeared. Applying the *Falcon* language, there is no sufficient nexus.

Before the undersigned, to whom the case was reassigned after Judge McFadden resigned, had fully evaluated and comprehended *Falcon,* the Court permitted an evidentiary hearing on class certification and on Elizabeth Pruitt's motion to intervene. In doing this, the Court was probably in

error as to the class certification issue. If the Court made a mistake, the error was without injury except for the time and effort the parties expended preparing for and during the hearing, considerable of which had to do with the intervention question. Nothing in the testimony taken during the redundant class certification hearing deflects the thrust of the Fifth Circuit opinion and of *Falcon,* or changes this Court's view, as already expressed, of the facts and law bearing on class certification under Rule 23.

In its opinion of March 13, 1981, the Fifth Circuit, at 638 F.2d at 1335, expressly recognizes that "the district court could dismiss the class complaint if it found that the plaintiffs lacked a sufficient nexus with the class to be one of its members". As is apparent by now, this Court believes that the Supreme Court has decided the "nexus" question against Rhoades and Lowery. Even if it did not, this Court finds, as a fact, that there is not here a sufficient nexus, because applicants for supervisory positions at Jim Dandy, such as Rhoades and Lowery, are not sufficiently identified with the interests of others who may have complaints of sexual discrimination in refusals to hire them for lower level labor jobs in the plant, or of those who may have complaints over disparate job assignments or pay. The mere sharing of gender or of race does not provide nexus. It is too late for Rhoades and Lowery to say simply, if honestly, that they are "interested" in the rights of all females across-the-board who may have been discriminated against by Jim Dandy. There is a quantum difference between the philosophical interest now claimed by Rhoades and Lowery and the true or actual interest necessary to provide nexus. There may be nice distinctions between the concepts of nexus, typicality and commonality, but the concepts tend to merge, as indicated in *Falcon.* In following the suggestion of the Fifth Circuit that the district court may determine whether or not there is sufficient nexus, the Court, for the reasons stated, finds that there is not.

## THE BELATED MOTION TO INTERVENE

◼ On December 16, 1982, over eight years after the complaint was filed and over two years after the Fifth Circuit opinion, Elizabeth Pruitt, pursuant to Rule 24(b), F.R.Civ.P., represented by the same counsel who represent Rhoades and Lowery, filed a motion for permissive intervention as a party plaintiff, in apparent recognition of the impact of *Falcon* on the standing of Rhoades and Lowery to represent the putative female class. Rule 24(b), which is specifically invoked by Pruitt, clearly recognizes that the granting or denial of intervention is discretionary. In light of *Falcon* and *Geraghty,* which in combination point out that there is no longer a viable case into which Pruitt could intervene, it is probable that there is no longer any area of discretion within which this Court to operate under Rule 24(b). Intervention presupposes a viable cause of action. In *Geraghty,* 100 S.Ct. at 1020, the Supreme Court said:

> The fact that a named plaintiff's substantive claims are mooted due to an occurrence *other than a judgment on the merits,* does not mean that all other issues in the case are mooted. A plaintiff who brings a class action presents two separate issues, one being the claim on the merits and the other being the claim that he is entitled to represent a class. (emphasis supplied).

In the instant case, there was and is a "judgment on the merits" against Rhoades and Lowery. An application of this *Geraghty* language, therefore, eliminates all opportunity for plaintiffs now to relitigate or to add issues beyond the scope of the Fifth Circuit's mandate, which was to "reconsider". The Fifth Circuit did not disturb the "judgment on the merits" against Rhoades and Lowery and did not order a trial *de novo* on the female class certification issue. It did not leave open or invite the possibility of an intervention, particularly once the unanticipated interposition of *Falcon* took place.

◼ If this Court should, by some stretch of the imagination, still have the discretion to consider Pruitt's motion, the Court, in an exercise of that discretion, concludes that

her motion should be denied for several reasons. First, her motion is obviously a last-minute, last-ditch effort to avoid the impact of *Falcon.* Secondly, Pruitt has slept on her rights so long that to allow intervention now, with witnesses having died and scattered, and with Jim Dandy having gone out of business, would "unduly delay or prejudice the rights of the original parties". Rule 24(b). Thirdly, to allow Pruitt to come into the case now would, in practical effect, completely change the complexion of the case so as to make it into an entirely new law suit, with across-the-board charges, something which would tend to "prejudice the rights of the original parties". Rule 24(b). It would be a more accurate description of Pruitt to describe her as a substitute-plaintiff rather than an intervenor-plaintiff, the original plaintiffs having passed from the case. Lastly, Pruitt did not prove that she filed a complaint with EEOC, much less that she filed a Title VII action within the limitation period after a right-to-sue letter. She has no more of a valid claim on the merits than does Rhoades or Lowery. She, therefore, cannot substitute and by doing so make nothing into something. When Rhoades and Lowery fell by the wayside for the reason explained in *Falcon,* a void was created, a void which cannot be filled by an individual who is herself barred because she did not press her claim. The procedural circumstances here may be unique, but they are formidable. This is even more true when Pruitt has not, in this Court's opinion, met her burden of proving, by a preponderance of the evidence, that from August 28, 1974 until December 16, 1982, she was vicariously relying upon the class representation of Rhoades and Lowery. There is no evidence that she even knew of this suit until after the Fifth Circuit opinion. The fact is that counsel for Rhoades and Lowery were suddenly confronted with *Falcon.* They are to be complimented for recognizing their problem, but their problem cannot be solved by the device of a belated petition for intervention by a new client they have located. If they can solve the problem in this fashion, then *Falcon,* which stands for an end to class action litigation where the would-be class representatives themselves have no cause of action, can be circumvented easily, even after the statute of limitations has run, by the simple expedient of finding a new plaintiff who has or once had an individual cause of action.

In its brief, Jim Dandy urges several other reasons, such as a lack of numerosity, for not certifying a female class. While some of Jim Dandy's arguments may have merit based on the facts which came out in the evidentiary hearing which was erroneously held, the Court finds other reasons unnecessary to a decision, and the Court will make no finding as to those alleged reasons.

CONCLUSION

The judge to whom this case is now assigned is not called upon to express himself and will not express himself as to what he would have done had he been the judge to whom the case was assigned at the time of the original decisions, either on the class determination or on the merits of the Rhoades and Lowery claims. The writer is not prepared to substitute his discretion for the discretion of Judge McFadden. There is a legitimate and convincing rationale for Judge McFadden's decision. This writer has not only carefully considered the Fifth Circuit opinion and the *Falcon* opinion, but has carefully studied the depositions and other materials used by Judge McFadden in reaching his decision against class certification. The writer has also carefully considered the transcript of the testimony and the exhibits received during the hearing on the merits of the individual claims of Rhoades and Lowery. This Court cannot conclude that Judge McFadden abused his discretion any more than the Fifth Circuit could conclude that he abused his discretion.

An appropriate order is being entered contemporaneously.

ADDENDUM TO MEMORANDUM OPINION DATED MARCH 25, 1983

After this Court issued its Memorandum Opinion of March 25, 1983, *Lawler v. Alex-*

*ander,* 698 F.2d 439 (11th Cir.1983) was brought to the Court's attention. The suggestion was made that *Lawler* may have some bearing on *Jim Dandy.* The Court does not think so. *Lawler* was decided by the Eleventh Circuit on February 14, 1983. The Eleventh Circuit there vacated the district court's order which had defined a class under Rule 23. The Eleventh Circuit remanded the case for a redefinition of the class. At p. 441 the Eleventh Circuit said:

> The general rule is that a district court's class certification order is final "unless there [has been] an abuse of discretion, or the court has applied impermissible legal criteria or standards." *Carey v. Greyhound Bus Co.,* 500 F.2d 1372, 1380 (5th Cir.1974).

In *Jim Dandy* the Fifth Circuit did not find or suggest that Judge McFadden had applied impermissible criteria or standards. In *Lawler* the Eleventh Circuit found that the district court had applied erroneous criteria or standards in defining the class too narrowly, in that the lower court had excluded Step I applicants from the putative class, when, logically there was no way for a Step II applicant to become a member of the Step II sub-class without first being in the Step I class so that any true class must include Step I applicants. *Lawler* did not involve a review of the adequacy of the class representatives where the would-be representatives have no viable claims themselves. For this reason, and because in *Jim Dandy* the Fifth Circuit did not *vacate* Judge McFadden's refusal to certify the class but simply *remanded* for a reconsideration and an articulation of a rationale to support the exercise of his discretion in refusing to certify a class, the Court finds *Lawler* not applicable or helpful here. Put another way, there is no reason to discuss a redefinition of a class if no class is certified. Rhoades and Lowery have not sought a specific class definition, much less a redefinition. Instead, the plaintiff here seek to mount an across-the-board attack on all practices by Jim Dandy which result in sex discrimination. Across-the-board class certification is something which *Falcon* frowns upon. In fact, if the plaintiffs here ever

admitted to a smaller class than the class including every woman who may have been discriminated against in whatever context by Jim Dandy, plaintiffs would only compound their numerosity problem.

The Court finds no reason in *Lawler* for altering its opinion of March 25, 1983.