John M. TWEET, Donna P. Tweet,
Danniele Middleton and David
Middleton, Plaintiffs,

v.

Raymond A. WEBSTER, California State
Automobile Association, and Farmers
Insurance Exchange, Defendants.

No. CV–R–84–47–ECR.

United States District Court,
D. Nevada.

Aug. 8, 1985.

G.C. Backus, Reno, Nev., for plaintiffs.

David R. Grundy, Hibbs, Roberts, Lemons & Grundy, Reno, Nev., for Farmers Ins. Exchange.

Bruce R. Laxalt, Beckley, Singleton, DeLanoy & Jemison, Reno, Nev., for California Auto. Ass'n and Raymond A. Webster.

ORDER

EDWARD C. REED, Jr., District Judge.

Plaintiffs move this Court for reconsideration of its order (Document # 28) filed May 15, 1985, 610 F.Supp. 104, granting summary judgment in favor of defendant California State Automobile Association ("CSAA") and dismissing the complaint in the above-entitled matter. Plaintiffs' motion is made on the grounds that the Court's decision is contrary to state court holdings and to state law.

Defendant (CSAA) opposes plaintiffs' motion for reconsideration with respect to CSAA on the grounds that this Court correctly interpreted existing Nevada law and its unfair claims settlement practices statute, that unpublished lower state court holdings have no precedential value, that claims presented for the first time in a petition for rehearing cannot be considered, and that summary judgment in favor of CSAA was appropriate and supported by long-standing authority from the Nevada Supreme Court.

Plaintiffs have presented no new evidence in connection with their motion for reconsideration. The unpublished state district court decisions filed with the motion for reconsideration may not be considered by this Court as they have no precedential value here.

In reconsidering our previous order, we will take another look at the evidence already presented in connection with the motion for summary judgment, the applicable Nevada state law and its interpretation and, in particular, Nevada's unfair claims settlement practices statute. In addition, we will consider any modification in controlling state law enunciated before or during this reconsideration. *See Walker v. Jim Dandy Co.*, 97 F.R.D. 505 (N.D.Ala. 1983); *Yuclan Enterprises, Inc. v. Nakagawa*, 583 F.Supp. 1574 (D.Hawaii 1984).

▇ Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 677 (9th Cir. 1984). Although the initial burden of showing no issue of material fact is on the proponent, *Int. Un. of Bricklayers Etc. v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir.1985), the opponent must present some significant probative factual evidence tending to support his complaint. *Compton v. Ide*, 732 F.2d 1429, 1434 (9th Cir. 1984).

▇ With respect to the complaint against CSAA, before us under diversity jurisdiction, we have found that Nevada law applies. The complaint arose out of an automobile accident in California between plaintiffs and a non-party alleged tortfeasor who was insured by defendant CSAA. Plaintiffs are residents of Nevada and negotiated their alleged claim against CSAA out of CSAA's Reno, Nevada district office. Therefore, any alleged tort of bad faith refusal to settle on the part of CSAA took place in Nevada, and this Court previously correctly interpreted Nevada's *lex loci* rule. *See Mitrovich v. Pavlovich*, 61 Nev. 62, 114 P.2d 1084 (1941) and progeny.

As discussed in our previous order, the issue in this case is whether the Nevada Insurance Code creates a private right of action in favor of third party claimants against insurers for bad faith refusal to settle a reasonably clear claim. Plaintiffs contend that the Nevada statutes and, in particular, NRS 686A.310 (unfair claims settlements practices), are identical to those of California as far as is relevant to this case, and should be interpreted by this Court as have those of California. Under its statutory scheme, California recognizes such a private right of action. *Royal Globe Inc. Co. v. Superior Court, etc.*, 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979). Our conclusion remains that the Nevada statutes differ in significant ways and that it was not the intention of the Nevada legislature in enacting its statutes to create a private right of action. The discussion below will focus on these differences.

Section 790 of the California Insurance Code, enacted in 1959, enumerates certain unfair and deceptive practices in the business of insurance (§ 790.03) and gives the insurance commissioner the power to investigate, prosecute and punish violators through cease and desist orders and fines (§§ 790.04–790.08). Section 790.09 specifically provides that in an enforcement proceeding by the commissioner,

> "[n]o order to cease and desist issued under this article directed to any person ... shall in any way relieve or absolve such person from ... *civil liability* or criminal penalty under the laws of this State arising out of the methods, acts or practices found unfair or deceptive." (emphasis added)

In 1972, subdivision (h) was added to Cal. Ins.Code § 790.03, listing fifteen specific claims settlement procedures considered to be unfair practices when knowingly committed or performed "with such frequency as to indicate a general business practice." § 790.03(h)(5) lists as one of these practices:

(5) *Not attempting in good faith* to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. (emphasis added)

In 1979, a divided California Supreme Court held that the preservation of an insurer's "civil liability" in § 790.09, considered in conjunction with § 790.03(h)(5), created a private right of action in a third party claimant against an alleged tortfeasor's insurer for that insurer's failure to attempt in good faith to effectuate a prompt, fair settlement of a claim in which liability had become reasonably clear. *Royal Globe Ins. Co. v. Superior Court, Etc., supra. See also Avila v. Travelers Ins. Co.*, 481 F.Supp. 431 (C.D.Cal.1979), *aff'd*, 651 F.2d 658 (1981) (discussing *Royal Globe.*)

Nevada law is different. Title 57, the Nevada Insurance Code, with 42 chapters, is a comprehensive plan by the State of Nevada to regulate the insurance industry. Chapter 679B sets forth the duties and powers of the insurance commissioner, which are, among other things, the power to enforce the provisions of the code (679B.120(3)), investigate fraudulent claims (679B.154–55), enjoin violators of the code and turn information of such violation over to the district attorney or attorney general for appropriate proceedings (679B.180) and hold hearings on matters within the scope of the code (679B.310). Appeal from the findings of the commissioner is available in state district court (679B.370). NRS 679B.310 et seq., in setting forth a comprehensive administrative hearing procedure to be followed in the event of violations of the code, has provisions for notice to and intervention by all those whose pecuniary interests might be affected by the commissioner's orders. Those with pecuniary interests may also appeal directly to the state courts.

NRS 679A.180 ("General Penalties") provides that, unless defined by state law as a felony, violations of the code are misdemeanors. 679A.180(2) states that:

Every penalty imposed by this code shall be in addition to any applicable suspension, revocation or denial of a license or certificate of authority.

However, nowhere in Title 57, NRS, is there a provision analogous to Cal.Ins.Code § 790.09. NRS 679A.180 contains no reference to the existence of "civil liability," the words which were the basis of the California court's decision holding that a private cause of action existed in favor of third parties against insurers who commit unfair claims settlement acts. *Royal Globe*, 592 P.2d at 332.

NRS 686A.310 was added to the Nevada Insurance Code in 1975, defining twelve specific activities considered to be unfair claims settlement practices when engaged in "with such frequency as to indicate a general business practice." The unfair claims activities listed in NRS 686A.310 are identical to those listed in Cal.Ins.Code § 790.03(h), with two exceptions: subdivision (5) has a different wording and subdivisions (13) through (15) of § 790.03(h) (relating to failure to provide an explanation for the basis relied on in denying a claim or offering a compromise settlement, directing a claimant not to obtain the services of an attorney and misleading a claimant as to the applicable statute of limitations) are omitted from the Nevada statute. Subdivision (5) of NRS 686A.310, with which we are concerned in the present case, provides that one unfair claims settlement practice is:

(5) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

Unlike Cal.Ins.Code § 790.03(h)(5), NRS 686A.310(5) contains no mention of "good faith." Since Nevada's statute was passed three years after California's and both statutes appear to be patterned after the National Association of Insurance Commissioners' model legislation which contains language identical to California's, (*See* NAIC Model Unfair Trade Practices Act § 4(9)(f); *Royal Globe* 592 P.2d at 332; Cal.Ins.Code § 790.03(h)(5)), NRS

686A.310(5), it appears to this Court that the Nevada legislature intended to omit the good faith wording from this statute. Where plaintiffs' cause of action against CSAA is based on a non-existent statutory requirement that CSAA make a good faith attempt to settle, it fails.

Where the statutes do not specifically create a private cause of action, we must focus on legislative intent. *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979), and progeny. Based on its statutes, the California court concluded that the California legislature intended to create a private right of action in third party claimants. Where the Nevada statutes do not include the positive indicia relied on in California, and absent any other indications, it is our conclusion that the Nevada legislature intended to create only the penalties and remedies it did in enacting the Nevada Insurance Code and to foreclose any additional private right of action. *See Middlesex County Sewage Authority v. Sea Clammers*, 453 U.S. 1, 21, 101 S.Ct. 2615, 2627, 69 L.Ed.2d 435 (1980) (the existence of express remedies demonstrates that Congress intended to foreclose other implied private actions); *Holter v. Moore and Co.*, 681 P.2d 962, 965 (Colo.App.1983) (absent strong indicia of intent to the contrary, courts are compelled to conclude that the legislature provided precisely the remedies it considered appropriate). As the Nevada Supreme Court has observed, defendants "urge that if civil liability is to be imposed, it should be accomplished by legislative act after appropriate surveys, hearings, and investigations to ascertain the need for it and the expected consequences to follow. We prefer this point of view." *Hamm v. Carson City Nugget, Inc.*, 85 Nev. 99, 101, 450 P.2d 358 (1969) (advocating judicial restraint). *See also Bell v. Alpha Tau Omega*, 98 Nev. 109, 111, 642 P.2d 161 (1982) (approving the point of view in *Hamm*).

Other jurisdictions have considered the question of whether their insurance codes create a private right of action against insurers for third party claimants. See list in *Patterson v. Globe American Cas. Co.*, 101 N.M. 541, 685 P.2d 396, 397 (1984). States recognizing such a right under their statutory schemes include Louisiana, California, Montana, West Virginia and Arizona. States in which a private right of action is not recognized under the applicable statutes include Illinois, Iowa, New Jersey, Pennsylvania, Texas, Vermont, Wisconsin and New Mexico. Washington does not recognize such a right of action in third parties based on principles of contract. *See Bowe v. Eaton*, 17 Wash.App. 840, 565 P.2d 826 (1977).

The court in *Patterson* commented that the statutes construed in cases recognizing an implied cause of action in favor of third party claimants against insurers differed from New Mexico's. As outlined by the court, New Mexico's statute was comprehensive giving the Superintendent of Insurance investigative, regulatory and hearing powers and providing for administrative, injunctive and civil penalties and for appeal to the court of appeals. *Patterson*, 685 P.2d at 398. Discussing other New Mexico statutes in which private rights of action had been expressly created, the court concluded that the legislature knew how to create such a right if it intended to do so, and where it failed to provide for private actions in the insurance code, it did not intend to create them. *Id.*

In *Tufts v. Madesco Inv. Corp.*, 524 F.Supp. 484, 486 (E.D.Mo.1981), the federal district court compared Missouri's insurance code "savings clause" to California's and found that the Missouri statute contained a "similar but critically different provision." Missouri's § 375.942(5) provides that:

"No order of the director ... or order of a court to enforce the ... [code] shall in any way relieve or absolve any person affected by such order from any liability under any other laws of this state."

*Id.* at 486–87. This was contrasted with Cal.Ins.Code § 790.09 which says that "[n]o order to cease or desist issued under this article directed to any person ... shall in any way relieve or absolve such person

from ... civil liability or criminal penalty under the laws of this State." While the language of the two "savings clauses" is somewhat different, the thrust of the statutes sees to be the same. Nevertheless, the *Tufts* court found that a reasonable interpretation of the language "liability under any other laws of this state" meant that civil liability would not arise from a violation of the Missouri insurance statute and that the statute, therefore, did not provide for a private right of action in third party claimants. *Id.* at 487.

The *Tufts* court also observed that an Illinois court had construed an identical "savings" provision in the Illinois insurance code in the same way, finding no private right of action for third parties, citing *Scroggins v. Allstate Ins. Co.*, 74 Ill. App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1978). *Tufts*, 524 F.Supp. at 487.

By contrast, the Arizona Supreme Court construed an Arizona insurance code provision which is similar to Missouri's to mean that there was a private right of action against an insurer by third parties irrespective of governmental action. *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127, 1139 (1982), *cert. denied*, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982). The reasoning of the *Sparks* court was that it had to be consistent with an earlier court's interpretation of an identical section in Arizona's consumer fraud act under which a private right of action was recognized. The issue in *Sparks* was deceptive sales practices and not bad faith refusal to settle claims.

The Wisconsin statute is different still in that it *expressly* provides that an insurance carrier may be sued directly but only where the insurance policy was issued or delivered in the state and the accident, injury or negligence also occurred in the state. *Uebelacker v. Horace Mann Ins. Co.*, 500 F.Supp. 180, 182 (E.D.Wis.1980). Even in this event, a third party's right to maintain an action for bad faith refusal to settle against an insurer is recognized in Wisconsin only where the claimant has a *vested* claim, as the result of statutory entitlement

(workman's compensation) or an unsatisfied judgment against the insured. *Id.* at 183.

Nevada's insurance code has no "savings clause" similar to those found in the statutes of California, Arizona, Missouri or Illinois. NRS 697A.180(2) simply provides that penalties imposed by the code shall be "in addition to any applicable suspension, revocation or denial of a license or certificate of authority." It is the language of the "savings clauses" on which the courts in California and Arizona relied in finding that private rights of action in favor of third party claimants would lie against insurers. The courts in Missouri and Illinois found the language in the "savings clauses" of the statutes of these states was not inclusive enough to preserve an insurers' civil liability and so to create a private right of action in third party claimants. Where Nevada's insurance code has *no* language relating to other liability of insurers, none can be read in. The reasoning in *Patterson v. Globe American Cas. Co.*, *supra*, that where a legislature writes an insurance code with specific penalties and remedies for violation thereof, the code is as the legislature intended, applies equally to Nevada. Had the legislature also intended to create a private right of action in third party claimants, it would have done so.

Furthermore, in the present case, plaintiffs do not present probative evidence supporting their allegation that their claim against CSAA had become "reasonably clear." *See e.g., Beckhan v. Safeco Ins. Co. of America*, 691 F.2d 898, 903 (9th Cir.1982) (applying California law) (there must be some objective factual basis for disputing liability to defeat a motion for summary judgment on the ground that liability is not reasonably clear). Where the plaintiffs do not make an adequate showing of the existence of a triable issue of fact with respect to CSAA's liability, summary judgment is appropriate. *Avila v. Travelers Ins. Co.*, 651 F.2d 658, 660 (9th Cir.1981).

Where third party claimants have no private cause of action against an alleged tortfeasor's insurer under statutory scheme in Nevada, they also have no cause of action under any theory of contract or tort. *State ex rel Allen v. District Court,* 69 Nev. 196, 245 P.2d 999 (1952). *Allen,* holding that a third party claimant does not have a discoverable interest in the value of a liability policy insuring an alleged tortfeasor where Nevada statutes do not create a contractual relationship between the insurer and such third party, still is good law. In addition, although the Nevada Supreme Court has found that an implied covenant of good faith and fair dealing exists between an insurer and his insured based on a special element of reliance, *U.S. Fidelity v. Peterson,* 91 Nev. 617, 540 P.2d 1070 (1975), the court has refused to find this implied covenant in other situations not based on this reliance. *See e.g. Aluevich v. Harrah's,* 99 Nev. 215, 660 P.2d 986 (1983) (not found between lessor and lessee). Where the tort of bad faith refusal to settle has been recognized, it has had its genesis in these contractual obligations which give rise to a fiduciary duty. *Uebelacker v. Horace Mann Ins. Co.,* 500 F.Supp. at 184 (E.D.Wis.1980) (finding no such duty extended to third party claimants absent express legislative creation). Since there is no contractual relationship in the present case between plaintiffs and defendant CSAA, there also is no cause of action in tort for alleged breach of this fiduciary duty.

■ Therefore, we do not find any facts or evidence presented by plaintiffs to persuade us that a Nevada court would grant a third party claimant a cause of action directly against an insurer for bad faith refusal to settle a reasonably clear claim, based on statute, implied contract, or common law tort, under Nevada law as it stands today. *Commercial Union Ins. Co. v. Ford Motor Co.,* 640 F.2d 210 (9th Cir.1981).

■ Plaintiffs argue that a cause of action against CSAA exists where CSAA allegedly did not comply with the provisions of Nevada insurance regulation # 686A.670(2), which plaintiffs state requires an investigation by an insurer of a claim within thirty days following receipt of notice of the claim. Plaintiffs also claim that CSAA did not comply with the provisions of insurance regulation # 686A.675 which, they state, requires that an insurer may not delay settlement of a claim with a claimant not an attorney or not represented by one by extending negotiations until the claimant's rights may be affected by a statute of limitations and that the insurer must give the claimant sixty days' written notice prior to the expiration of the applicable time limit. Although this latter issue was not addressed in our May 15, 1985 order, it initially was raised and briefed by both parties. Defendant CSAA argues, and we agree, that NRS 679B, 686A.160 and 686A.170 set forth a fully-developed scheme of sanctions and remedies in a "comprehensive enforcement procedure to be used by the Commissioner in insuring [insurance company] compliance with the standard of conduct set forth in the Nevada Insurance Code." Motion for Summary Judgment, Document # 22 at p. 21. Although plaintiffs were not notified by CSAA that the applicable statute of limitations on their cause of action was about to expire until sixteen days before the fact, and plaintiff were not represented by counsel until one day before this notice was received, any remedy for this alleged violation lies initially with the insurance commissioner. Plaintiffs also ask us to take judicial notice of a disputable presumption that an unlawful act was done with an unlawful intent (NRS 47.250(1)). This we refuse to do.

Finally, in their original complaint, plaintiffs alleged fraud on the part of CSAA in settlement negotiations, but offered no probative evidence that the elements of fraud under NRS 205.380 existed in this case. Plaintiffs claimed that CSAA entered into negotiations without the intent to make a reasonable settlement but stated no facts showing this to be true. We found that where plaintiffs presented no evidence

tending to support their complaint on this issue, summary judgment for CSAA was appropriate. *Compton v. Ide, supra.*

For all of the above reasons, this Court found that summary judgment in favor of CSAA was appropriate. The Court now finds no reasons to alter its order of May 15, 1985.

IT IS, THEREFORE, HEREBY ORDERED that plaintiffs' motion for reconsideration of the order of this Court (Document #28) filed May 15, 1985, is DENIED.