**Mary S. HART, individually and as Guardian Ad Litem for Stephen G. Hart, a minor, Plaintiff,**

v.

**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY and Does 1 through 10, inclusive, Defendants.**

No. CV–S–93–307–PMP (RJJ).

United States District Court, D. Nevada.

April 12, 1994.

---

Ian Christopherson, Christopherson Law Offices, Las Vegas, NV, for plaintiff.

Robert D. Vannah, Vannah & Costello, Las Vegas, NV, for defendant.

## ORDER

PRO, District Judge.

Before the Court are cross-Motions for Summary Judgment on Plaintiff's cause of action for bad faith. Plaintiff Mary S. Hart filed her Motion for Summary Judgment (# 33) on January 14, 1994. Defendant Prudential Property and Casualty Insurance Company ("Prudential") filed its Motion for Summary Judgment (# 34) on January 18, 1994. Prudential filed an Opposition (# 35) to Plaintiff's Motion for Summary Judgment on January 24, 1994, and Plaintiff filed a Reply (# 36) on February 3, 1994. Also on February 3, 1994, Plaintiff filed an Opposition (# 37) to Prudential's Motion for Summary Judgment. Prudential did not file a Reply.

### I. Facts

This case arises from an automobile accident involving Stephen Hart, the minor son of Plaintiff Mary Hart. On March 26, 1992, Stephen was a passenger on a school bus when the bus was hit by another vehicle. On the day of the accident, Stephen was seen at the University Medical Center Quick Care Facility where he complained of pain in his right side abdomen and ribs and pain in his upper back and neck. He also vomited three or four times after the accident.

At the time of the accident, Stephen's mother, Plaintiff Mary Hart, carried a policy of insurance through Defendant Prudential which provides for up to $50,000 in coverage for medical payments. Pursuant to this policy, Plaintiff filed a claim with Prudential for the injuries allegedly suffered by her son as a result of the March 26, 1992 accident.

Prudential has apparently refused to pay a number of the submitted medical bills on the grounds that not all of Stephen's injuries resulted from the automobile accident.

Plaintiff's Complaint was removed to this Court from the Eighth Judicial District Court of the State of Nevada on the basis of diversity. Plaintiff seeks monetary damages on various theories of recovery. Plaintiff's Second Cause of Action, the subject of the present series of motions, seeks damages for Prudential's breach of the implied covenant of good faith and fair dealing, i.e., common law bad faith.

### II. DISCUSSION

While arguing for summary judgment in her favor, Plaintiff has raised an interesting question regarding the interrelationship between the common law tort of bad faith as it has been recognized in Nevada and the Nevada Unfair Insurance Practices Act (N.R.S. 686A.010 et seq.). This question must be resolved before turning to the issue of whether summary judgement on Plaintiff's bad faith claim is appropriate.

As an initial matter, since this Court's jurisdiction is invoked upon diversity of citizenship, a federal court is bound to apply the substantive law of the state in which it sits. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Strassberg v. New England Mutual Life Ins. Co.,* 575 F.2d 1262 (9th Cir.1978). Thus, Nevada law controls. However, in the absence of controlling Nevada law, this Court must use its own best judgment in predicting how the Nevada Supreme Court would decide the substantive issue. *See Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (1986), *modified,* 810 F.2d 1517 (9th Cir.1987); *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980). In performing that function, the Court may be aided by reviewing well-reasoned decisions from other jurisdictions. *Takahashi,* 625 F.2d at 316.

Plaintiff's argument, apparently taken from a local treatise,[1] contends that the status of Nevada law in the area of insurance bad faith has evolved such that a single

1. *See* J. Mitchell Cobeaga et al., *Nevada Bad*     *Faith Law and Practice* (1990).

violation of the Nevada Unfair Insurance Practices Act ("the Act") will constitute per se bad faith. If Plaintiff's contention is correct, a single violation of the act will constitute bad faith, thus obviating the need to prove bad faith in the traditional manner by submitting the question of reasonableness to the trier of fact. An evaluation of Plaintiff's argument must begin by tracing the history of the tort of bad faith in Nevada.

## A. *Common Law Bad Faith in Nevada*

The seminal case in Nevada in the area of insurance bad faith is *United States Fidelity & Guaranty Co. v. Peterson*, 91 Nev. 617, 540 P.2d 1070 (1975). In that case the Nevada Supreme Court first recognized the existence of a cause of action for an insurer's tortious breach of the implied covenant of good faith and fair dealing. *Peterson* involved a claim made by the insurer's own insured, i.e., a "first party" claim.[2] In recognizing the new tort, the Nevada Supreme Court stated:

> We approve and adopt the rule that allows recovery of consequential damages where there has been a showing of bad faith by the insurer. Where an insurer fails to deal fairly and in good faith with its insured by refusing without proper cause to compensate its insured for a loss covered by the policy such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing. The duty violated arises not from the terms of the insurance contract but is a duty imposed by law, the violation of which is a tort.

540 P.2d at 1071 (citing *Silberg v. California Insurance Co.*, 11 Cal.3d 452, 113 Cal.Rptr. 711, 521 P.2d 1103 (1974); *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973)). The court thus found that the record supported a finding of bad faith where the insurer acted unreasonably by refusing to negotiate or pay monies validly due under the insurance contract, where the insurer was aware of the precarious financial condition of its insured. *Id.*

In *American Excess Insurance Co. v. MGM Grand Hotels, Inc.*, 102 Nev. 601, 729 P.2d 1352 (1986), the Nevada Supreme Court cited its holding in *Peterson* with approval when it noted that "[b]ad faith involves an actual or implied awareness of the absence of a reasonable basis for denying the benefits of the policy." *Id.* at 1354. The court went on to hold that where the insurance company's interpretation of the contract was reasonable, there can be no basis for concluding that the insurance company acted in bad faith. *Id.*

More recently, in *Pemberton v. Farmers Insurance Exchange*, 109 Nev. 789, 858 P.2d 380 (1993), the Nevada Supreme Court, again relying on *Peterson*, stated that "[a]n insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy." 858 P.2d at 381 (citing *Peterson*, 540 P.2d 1070; accord *Noble v. National American Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866, 868 (1981); *Davy v. Public National Ins. Co.*, 181 Cal. App.2d 387, 5 Cal.Rptr. 488 (4th Dist.1960)).

Moreover, the court has clarified that "a jury question on [an] insurer's bad faith arises when relevant facts are in dispute or when facts permit differing inferences as to the reasonableness of [an] insurer's conduct." *United Fire Insurance Co. v. McClelland*, 105 Nev. 504, 780 P.2d 193, 197 (1989) (citation omitted). Thus, in Nevada, summary judgment is appropriate in insurance bad faith cases only when there is no material question of fact as to the reasonableness of the insurer's conduct.

## B. *The Nevada Unfair Insurance Practices Act*

While the common law tort of bad faith denial of an insurance claim was developing in Nevada, the Nevada legislature was embarking on an effort to establish a comprehensive plan to regulate the activities of the insurance industry within the state. The result of this effort was Title 57, the Nevada Insurance Code, which, among other things, sets forth the duties and powers of the insurance commissioner, establishes an adminis-

---

**2.** A "first party" claim involves a claim made on an insurance policy by the insurer's own insured. In contrast, a claim made on the insurance poli-

cy by another against the insured is termed a "third party" claim.

trative hearing procedure in the event there are violations of the Code, and provides a mechanism for appealing to the state courts. *See* N.R.S. § 679B et seq.

In 1975, N.R.S. § 686A.310 was added to the Nevada Insurance Code. As originally enacted, this section, patterned after the National Association of Insurance Commissioner's model legislation, designated certain activities which were considered to be unfair practices in settling insurance claims when they were engaged in "with such frequency as to indicate a general business practice." *See* NAIC Model Unfair Trade Practices Act § 4(9)(f). This new provision, however, did not expressly create a private cause of action for an individual injured as a result of an insurer engaging in any of the proscribed activities.

The federal district court, in *Tweet v. Webster*, 614 F.Supp. 1190 (D.Nev.1985), had occasion to determine whether § 686A.310 granted a third-party claimant a direct cause of action against a tort-feasor's insurer for a bad faith refusal to settle a reasonably clear claim.[3] The court found that under Nevada law, no such cause of action against existed on behalf of a third-party claimant that could be "based on statute, implied contract, or common law tort." *Id.* at 1195.

After the decision in *Tweet*, in 1987, the Nevada legislature amended § 686A.310. The legislature considered and passed A.B. 811 which, among other things, added subsection 2 to § 686A.310 and provided:

> 2. In addition to any rights or remedies available to the commissioner, an insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice.

A.B. 811 also eliminated the language which required that violations of § 686A.310 required a showing of a "general business practice." Thus, an insurer would be in violation of the statute for engaging in a single enumerated unfair act.

The newly-enacted subsection 2 formed the basis, in part, of the federal court's decision in *Crystal Bay General Imp. Dist. v. Aetna Cas. & Sur.*, 713 F.Supp. 1371 (D.Nev.1989), which found that the pre–1987 version of § 686A.310 permits implication of a private right of action by an a first-party claimant, i.e., the insured, against an insurer. *Id.* at 1376–1377. The court found that the implication of a private remedy from the pre–1987 act "is entirely consistent with the underlying purpose of the legislative scheme" as "was acknowledged by the amendments made by the 1987 legislature." *Id.* at 1377.

Plaintiff argues that Nevada law in this area has evolved such that the only conclusion that can be reached regarding the interrelationship between N.R.S. § 686A.310 and common law bad faith is that "one act in violation of N.R.S. [§] 686A.310 is sufficient to establish bad faith on the part of the insurance carrier." Plaintiff's Motion for Summary Judgment (# 33) at 9.

### C. *Plaintiff's Motion for Summary Judgment*

While it is clear that a private right of action exists under § 686A.310, Plaintiff did not plead such a violation in her Complaint. Plaintiff instead has chosen to plead that Defendant committed the common law tort of breach of the implied covenant of good faith and fair dealing. Plaintiff now argues that she may rely upon a violation of the statute to demonstrate common law bad faith. Thus, the question becomes whether it was the intent of the Nevada legislature to codify the common law tort of bad faith when it amended § 686A.310 in 1987? For the reasons set forth below, the Court finds that the Nevada legislature did not so intend.

Plaintiff, citing *Tweet v. Webster*, 614 F.Supp. 1190 (D.Nev.1985), begins her argument with the premise that "the duty of good faith and fair dealing in Nevada is imposed by statute; namely N.R.S. 686A.310." Plaintiff's Motion for Summary Judgment (# 33) at 6. Plaintiff then cites *Crystal Bay Gener-*

---

**3.** The plaintiff in *Tweet* based his cause of action in part on what at that time was subdivision (5), which is now subdivision (e), of § 686A.310 which defines one unfair settlement practice as:

(5) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

al Imp. Dist. v. Aetna Cas. & Sur., 713 F.Supp. 1371 (D.Nev.1989), and its recognition that § 686A.310 permits implication of a private right of action by an insured against an insurer. Thus, Plaintiff argues, since Nevada recognizes the doctrine of negligence per se, citing *Southern Pacific Co. v. Watkins*, 83 Nev. 471, 435 P.2d 498 (1968) and *Barnes v. Delta Lines, Inc.*, 99 Nev. 688, 669 P.2d 709 (1983), "a violation of N.R.S. [§] 686A.310 would constitute negligence per se, thus obviating the burden of proving actual bad faith." Plaintiff's Motion for Summary Judgment (# 33) at 6.

▪ The first flaw in Plaintiff's argument is the assertion that *Tweet* held that the duty of good faith and fair dealing in Nevada is imposed by statute. This is simply incorrect. As already noted, the issue in *Tweet* was whether a third-party claimant had a private cause of action under § 686A.310. Nowhere in the court's decision is it implied that the duty to act in good faith arises from statute. In fact, in *Peterson, supra,* the Nevada Supreme Court never mentions the Nevada Unfair Insurance Practices Statute, and explicitly states that the duty is one "imposed by law." 540 P.2d at 1071. The tort of bad faith in Nevada is not a creature of statute. It reflects a duty running between the insurer and the insured judicially created by case law. This fact is not fatal to Plaintiff's argument, but it does demonstrate that the nexus between common law bad faith and the act is more tenuous than Plaintiff would have the Court hold.

Perhaps Plaintiff's most compelling assertion is that by amending § 686A.310 in 1987 to provide that insureds may recover for damages sustained as a result of an unfair practice, the Nevada legislature, while fully aware of the existence of the common law tort of bad faith, intended to codify certain activities that were per se bad faith. This argument, at first glance, appears logically appealing considering the evolution of the law in relation to the enumerated practices. However, upon closer scrutiny it becomes clear that such is not the case.

*Peterson* made clear that bad faith may occur "where an insurer fails to deal fairly and in good faith with its insured *by refusing*

without proper cause to compensate its insured for a loss covered by the policy." 540 P.2d at 1071 (citations omitted) (emphasis added). Nearly all of the cases decided since *Peterson* restated the standard in virtually the same way. *See Pemberton,* 858 P.2d at 381 ("An insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy"); *Falline v. Golden Nugget Hotel & Casino,* 107 Nev. 1004, 823 P.2d 888, 891 (1991) ("Bad faith, the converse of good faith, has been defined as 'the absence of a reasonable basis for denying benefits ... and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim."); *American Excess,* 729 P.2d at 1354 ("Bad faith involves an actual or implied awareness of the absence of a reasonable basis for denying the benefits of the policy.") Thus, it appears that the focus of common law bad faith, and indeed the conduct for which liability is imposed, was on an unreasonable *denial* of the benefits of the policy.

In contrast, the Nevada Unfair Practices Act focuses upon different conduct than does the common law tort of bad faith. The statute proscribes specific actions taken by an insurer which Nevada has deemed to be unfair whether or not they are related to a denial of insurance benefits. For example, subdivision (i) states that an insurer engages in a unfair practice by "[f]ailing, *upon payment of a claim,* to inform insureds or beneficiaries of the coverage under which payment is made." N.R.S. § 686A.310(1)(i) (emphasis added). Were this Court to adopt Plaintiff's contention that a violation of the statute is per se bad faith, an insurer would be liable for bad faith even where it promptly paid a claim but may have inadvertently failed to inform its insured of the coverage under which payment was made. Such a situation may give rise to a private cause of action for damages incurred as a result of the statutory violation, but it certainly does not constitute common law bad faith.

▪ Therefore, the Court it unpersuaded that the intent of the Nevada legislature in enacting the Nevada Unfair Insurance Practices Act was codify of the common law tort of bad faith. While the statute and the

common law may overlap to a limited extent,[4] the statute reaches different conduct than that which is contemplated by the common law tort. Accordingly, as Plaintiff has alleged the common law bad faith tort, this Court applies the *Peterson* standard to the respective Motions for Summary Judgment.[5]

Therefore, as a result of the Court's findings, Plaintiff's Motion for Summary Judgment is easily resolved. As that Motion relies exclusively on purported violations of § 686A.310 to argue per se bad faith, and because the Court has already determined that this argument is without merit, Plaintiff's Motion must be denied.

### D. *Prudential's Motion for Summary Judgment*

 Prudential's Motion for Summary Judgment presents little by way of legal argument. Instead, Prudential argues that as a matter of law, there can be no bad faith because Prudential based its denial "of medical payments benefits on the independent medical examinations of two highly qualified physicians, the deposition testimony of both Plaintiffs, as well as the deposition testimony of Stephen Hart's treating physicians, of whom several indicated that Stephen Hart's problems may not be related to the 3/26/92 automobile accident." Defendant's Motion for Summary Judgment (# 34) at 17.

However, as *McClelland* points out, "a jury question on [an] insurer's bad faith arises when relevant facts are in dispute or when facts permit differing inferences as to the reasonableness of [an] insurer's conduct." 780 P.2d at 197 (citation omitted). At this

time, from the evidence presently contained in the record, the Court cannot say, as a matter of law, that the only inference that can be drawn is that Prudential's conduct was reasonable. Therefore, Prudential's Motion for Summary Judgment must also be denied.

IT IS THEREFORE ORDERED THAT Plaintiff's Motion for Summary Judgment or Partial Summary Judgment (# 33) is Denied.

IT IS FURTHER ORDERED THAT Defendant's Motion for Partial Summary Judgment (# 34) is Denied

---

**4.** For example, it is a violation of the statute where the insurer fails "to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies." N.R.S. § 686A.310(1)(c). Similarly, it has been held that "[a]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141, 145–46 (1979), *cert. denied*, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980). While it appears that both the statute and the common law mandate an investigation by the insurer, the crucial difference is that a failure to investigate is a violation of the statute giving rise to appropriate damages, where under the common law, a failure to investigate merely impacts the reasonableness of the denial.

**5.** The Court does not expect the ramifications of its decision on this issue to be far reaching. If the conduct of the insurer implicates a violation of § 686A.310, a plaintiff need only plead a violation of the statute to recover damages pursuant to the private right of action. What cannot be done, however, as was attempted here, is to prove common law bad faith simply by alleging a violation of the statute. As a practical matter, the effect of the Court's decision is to force plaintiff's in insurance bad faith cases to plead the statute if they intend to rely upon it.