OPINION
 

 Per Curiam:
 

 The district court granted respondent Farmers Insurance Exchange’s (“Farmers”) motion to dismiss appellant Sherry
 
 *791
 
 Pemberton’s bad faith claim. On appeal, Pemberton contends that the district court erroneously dismissed her bad faith claim because Nevada recognizes an implied covenant in automobile insurance policies that the insurance company will handle uninsured/underinsured motorist (“UM”) claims fairly and in good faith. We agree.
 

 Facts
 

 On December 5, 1989, appellant Sherry Pemberton was involved in an automobile collision with John C. Grabow in Clark County, Nevada. Pemberton suffered personal injuries as a result of the accident. Pemberton claims to have incurred medical expenses in the amount of $17,217.88 and wage loss in the amount of $27,408.00, for a total of $44,464.00 in special damages.
 

 Both parties had automobile insurance. Grabow was insured by State Farm Insurance Company with a policy limit of $15,000.00 which he tendered to Pemberton. Pemberton had UM coverage with Farmers in the amount of $100,000.00.
 

 About one and one-half years after the accident, Pemberton through her counsel demanded the policy limits of her UM coverage from Farmers. After receiving no response to her demand, on July 31, 1991, Pemberton filed a lawsuit in the Eighth Judicial District Court against Grabow. Pemberton alleged that she was involved in an accident on December 5, 1989, and that as a result of Grabow’s negligence, Pemberton suffered serious and disabling injuries, incurred medical expenses and wage loss. Pemberton informed Farmers of the lawsuit, giving Farmers an opportunity to intervene. Farmers intervened on September 12, 1991.
 

 In the interim, Pemberton provided Farmers with wage verification and information about her medical specials. On September 3, 1991, Farmers offered Pemberton $30,000 to settle her UM claim. Pemberton rejected the offer, based upon her inability to work as a teacher in the future and upon what she believed a jury would award her as damages.
 

 On September 23, 1991, an NRCP 16.1 case conference was held. After the NRCP 16.1 conference, Pemberton provided a report from her physician which stated that Pemberton’s injuries prevented her from performing as a teacher at the time he treated her. Pemberton gave Farmers until October 7, 1991, to settle the claim or she threatened to file a complaint against Farmers “for bad faith failure to honor, [her] entirely meritorious first party insurance claim.” Apparently, Farmers failed to settle the claim by October 7, 1991, prompting Pemberton to file a complaint for bad faith against Farmers.
 

 
 *792
 
 Subsequently, Farmers offered to settle Pemberton’s UM and bad faith claims for $100,000.00 or, in the alternative, to settle the UM claim for $85,000.00 and litigate the bad faith claim. On November 21, 1991, Pemberton offered to accept $100,000.00 for the UM claim and litigate the bad faith claim or settle both claims for $110,000.00. On November 14, 1991, Pemberton accepted $100,000.00 from Farmers under her UM policy but reserved the right to pursue her bad faith claim against Farmers.
 

 On November 21, 1991, Farmers filed a motion to dismiss Pemberton’s bad faith claim. The district court granted Farmers’ motion to dismiss, deferring the question of whether Nevada recognizes a bad faith claim by an insured against its insurer arising out of the handling of a UM claim to this court. This appeal followed.
 

 Discussion
 

 In reviewing a motion to dismiss, this court is to “determine whether or not the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief.” Edgar v. Wagner, 101 Nev. 226, 227, 699 P.2d 110, 111 (1985) (citations omitted). In making its determination, this court is “bound to accept all the factual allegations in the complaint as true.” Marcoz v. Summa Corporation, 106 Nev. 737, 739, 801 P.2d 1346, 1347 (1990). Further, “[a] claim should not be dismissed . . . unless it appears to a certainty that the plaintiff is not entitled to relief under any set of facts which could be proved in support of the claim.” Hale v. Burkhardt, 104 Nev. 632, 636, 764 P.2d 866, 868 (1988) (citation omitted).
 

 Implied Covenant of Good Faith
 

 In this issue of first impression, Pemberton contends that under Nevada law there is an implied covenant in automobile insurance policies that the insurance company will handle UM claims fairly and in good faith. Specifically, Pemberton argues that an insurance company owes a duty of good faith and fair dealing to its insureds who assert UM claims.
 

 Farmers contends that in the UM context the insured and the insurer are in an adversarial relationship which is inconsistent with the existence of an implied duty of good faith and fair dealing. Farmers argues that once a UM claim is filed the insurer is no longer a “friendly” person, thus, the insurer becomes an adversary, since the insurer steps into the shoes of the tortfeasor.
 

 Nevada law recognizes the existence of an implied covenant of
 
 *793
 
 good faith and fair dealing in every contract. A.C. Shaw Construction v. Washoe County, 105 Nev. 913, 914, 784 P.2d 9, 10 (1989); Ainsworth v. Combined Ins., 104 Nev. 587, 592, 763 P.2d 673, 676 (1988). An insurer fails to act in good faith when it refuses “without proper cause” to compensate the insured for a loss covered by the policy. United States Fidelity Co. v. Peterson, 91 Nev. 617, 620, 540 P.2d 1070, 1071 (1975). Such conduct gives rise to a breach of the covenant of good faith and fair dealing. 91 Nev. at 620, 540 P.2d at 1071. This breach or failure to perform constitutes “bad faith” where the relationship between the parties is that of insurer and insured.
 
 See generally
 
 K Mart Corp. v. Ponsock, 103 Nev. 39, 732 P.2d 1336 (1987).
 

 Pemberton’s argument that Nevada should recognize a duty of good faith in insurance contracts dealing with an insured and his or her insurer as to a UM claim is based upon a treatise by Alan Widiss which states the following:
 

 For approximately fifteen years — from the introduction of the uninsured motorist coverage in the mid 1950s until the early 1970s — there was little discussion in appellate court decisions addressing questions about the liability of an insurer for failing to deal in good faith and fairly with an insured seeking indemnification under the uninsured motorist coverage. To the extent that there was any reference in judicial opinions to an insurer’s conduct in terms of either “good faith” or “bad faith” in the handling of uninsured motorist insurance claims, it was to the effect that there was no justification for the imposition of punitive damages. Toward the end of this period, however, there were comments in several judicial decisions which suggested the insurers were subject to the obligation of good faith and fair dealing.
 
 For example, in a 1969 Nevada Supreme Court decision that involved uninsured motorist coverage, the court manifests an attitude towards an insurer’s obligation which probably was representative of that held by many judges in the 1960s and 1970s.
 

 An insurance policy is not an ordinary contract.
 
 It is a complex instrument, unilaterally prepared and seldom understood by the insured. The parties are not similarly situated. The company and its representatives are expert in the field; the insured is not.
 
 For this reason we do not hesitate to place the burden of affirmative action upon the insurance company.
 
 When notified of a claim it should investigate with reasonable dispatch; demand arbitration if that is its desire and settlement can’t be reached; consent to suit against the uninsured motorist
 
 *794
 
 when notified of its pendency; or seek leave to intervene and present its contentions. Multiple litigation is not desirable.
 
 In short, the insurance company may not ignore its insured and then seek refuge in the fine print of its policy.
 

 2 Alan Widiss,
 
 Uninsured and Underinsured Motorist Insurance
 
 § 20.3, at 153-54 (2d ed. 1992) (quoting Allstate Insurance Co. v. Pietrosh, 85 Nev. 310, 316, 454 P.2d 106, 110 (1969)) (citation omitted; footnote omitted) [hereinafter Widiss].
 

 In
 
 Pietrosh,
 
 Allstate sought a declaratory judgment, seeking to deny its liability on a judgment the insured obtained from the uninsured driver. 85 Nev. at 311-12, 454 P.2d at 108. The insured pursued the suit against the tortfeasor without the permission of the insurer, although the insurer had notice of the suit, and it was free to intervene. The insurer argued that because the insured sued without permission of the insurer in violation of the contract, the judgment had no effect on the insurer. 85 Nev. at 312, 454 P.2d at 108. This court held that the insurer was liable for the judgment. 85 Nev. at 316, 454 P.2d at 111. Further, this court stated that an insured who is injured by an uninsured driver has several options in Nevada:
 

 [h]e [or she] may settle his [or her] claim with his [or her] insurance company; settle with the insured motorist; arbitrate with his [or her] insurance company; sue his [or her] insurance company; sue the uninsured motorist; or sue both, joining them as codefendants.
 

 85 Nev. at 313, 454 P.2d at 108. This court held that the insurer was bound by the judgment, and that permission to sue was not required. 85 Nev. at 316, 454 P.2d at 110. Widiss relies upon this court’s statement, that an option of an insured is
 
 to sue the insurer,
 
 to suggest that Nevada recognizes an action of liability for the failure of the insurance company to settle an uninsured motorist claim with an insured. Widiss, § 20.3, at 153-54.
 

 Numerous appellate court decisions affirm that an insurer’s failure to deal fairly and in good faith with an insured’s UM claim is actionable.
 
 See
 
 Craft v. Economy Fire & Casualty Co., 572 F.2d 565 (7th Cir. 1978);
 
 see also
 
 Richardson v. Employers Liab. Assurance Corp., 102 Cal.Rptr. 547 (Cal.Ct.App. 1972)
 
 overruled on other grounds by
 
 Gruenberg v. Aetna Ins. Co., 510 P.2d 1032 n.10 (Cal. 1973); Braesch v. Union Ins. Co., 464 N.W.2d 769 (Neb. 1991); Beck v. Farmers Ins. Exch., 701 P.2d 795 (Utah 1985). Escalante v. Sentry Ins., 743 P.2d 832 (Wash.Ct.App. 1987);
 
 see generally
 
 Widiss § 20.4(B), at 162.
 

 In
 
 Craft,
 
 applying Indiana law, the court set forth the following
 
 *795
 
 for allowing a bad faith claim against an insurer in a UM context: The court stated the issue as “whether under Indiana law there is an implied covenant in automobile insurance policies that the insurance company will handle claims under the uninsured motorist coverage of the policies fairly and in good faith.” 572 F.2d at 567. The court reasoned that Indiana law recognized the existence of an implied duty of good faith and fair dealing with regard to other types of insurance.
 
 Id.
 
 (citations omitted). Economy argued that uninsured motorist coverage presented a situation diiferent from other types of insurance because an adversarial relationship exists.
 
 Id.
 
 The court of appeals upheld an implied duty of good faith in the UM motorist context.
 
 Id.
 
 at 570.
 

 The court of appeals in
 
 Craft
 
 adopted California law to reach its conclusion, citing Richardson v. Employers Liab. Assurance Corp., 102 Cal.Rptr. 547 (Cal.Ct.App. 1972). In
 
 Richardson,
 
 the court found that a duty of good faith was implied in law with respect to uninsured motorist coverage based upon “[a] reasonable expectation of the insured under such protection . . . that his [or her] claim [would] be handled by the insurer promptly, fairly and in good faith.”
 
 Id.
 
 at 556. The court in
 
 Craft
 
 found nothing “inherent in the nature of uninsured motorist protection that is inconsistent with a requirement that the insurance company attempt in good faith to reach an agreement with its insured and that any attempt to force the insured to settle for less than his [or her] claim be predicated on a bona fide dispute as to the amount of liability.”
 
 Id.
 
 at 568. The court of appeals concurred with
 
 Richardson
 
 and Widiss, the author of the “definitive treatise” in the UM field, stating that the standard of conduct requiring an insured to deal with its insured in good faith is appropriate for claims in the UM context.
 
 Craft,
 
 572 F.2d at 568 (citation omitted.)
 

 Farmers relies upon Quick v. State Farm Mutual Auto. Ins. Co., 429 So.2d 1033 (Ala. 1983), to argue that an insured is required to obtain a judgment prior to receiving UM proceeds. Farmers misconstrues the rationale of
 
 Quick.
 
 In
 
 Quick,
 
 until liability of the uninsured motorist is determined, the insured and insurer are adversaries.
 
 Id.
 
 at 1035.
 
 Quick
 
 affirms the holding of prior cited cases, stating that “there can be no breach of an uninsured motorist contract, and therefore no bad faith, until the insured proves that he is legally entitled to recover.”
 
 Id.
 

 Legal Entitlement
 

 Farmers argues that an insured is required to establish “legal entitlement” by obtaining a judgment against the tortfeasor prior to making a claim from its insurer for UM proceeds. Farmers
 
 *796
 
 contends that NRS 687B. 145(2)
 
 [1]
 
 requires an insured to establish “legal entitlement” to prevail on a UM claim against its insurer, and the only way to establish “legal entitlement” is to obtain a judgment against the underinsured.
 

 Farmers argues that the term “legal entitlement” in
 
 Pietrosh
 
 is synonymous with “judgment.” 85 Nev. at 310, 454 P.2d at 106. We disagree.
 
 Pietrosh
 
 provides what options are available for an insured who is “legally entitled” to recover damages from the owner or operator of an uninsured vehicle, such as, settle with the insurance company, settle with the uninsured motorist, arbitrate with the insurance company, or sue the insurance company. 85 Nev. at 313, 454 P.2d at 108.
 
 Pietrosh
 
 does not explain what is meant by “legal entitlement.”
 

 “Legal entitlement” has been interpreted to mean that the “ ‘insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages.’ ” Patrons Mut. Ins. Assoc. v. Norwood, 647 P.2d 1335, 1338 (Kan. 1982) (quoting Winner v. Ratzlaff, 505 P.2d 606, 610 (Kan. 1973));
 
 accord
 
 Harvey v. Mitchell, 522 So.2d 771, 773 (Ala. 1988); Allstate Ins. Co. v. Elkins, 381 N.E.2d 1, 4 (Ill.App.Ct. 1978),
 
 aff’d,
 
 396 N.E.2d 528 (1979); Allied Fidelity Ins. Co. v. Lamb, 361 N.E.2d 174, 180 (Ind.Ct.App. 1977); Reese v. Preferred Risk Mut. Ins. Co., 457 S.W.2d 205, 208 (Mo.Ct.App. 1970); Satzinger v. Satzinger, 383 A.2d 753, 755 (N.J.Super.Ct.Ch.Div. 1978); DeLuca v. Motor Vehicle Accident Indemnification Corp., 215 N.E.2d 482, 484 (N.Y. 1966); Sahloff v. Western Casualty & Surety Co., 171 N.W.2d 914, 917 (Wis. 1969). Until the insured
 
 *797
 
 has established “legal entitlement,” no claim for bad faith will lie. We agree that an insured must demonstrate fault by the tortfeasor and the extent of damages before a claim for bad faith will lie. But, an insured is not required to obtain a judgment against the tortfeasor before he or she is entitled to receive proceeds under a UM policy. Brown v. USAA Casualty Ins., 840 P.2d 1203, 1204 (Kan.Ct.App. 1992).
 

 Accordingly, we hold that an insured may institute a bad faith action against his or her insurer once the insured establishes “legal entitlement” and unreasonable conduct by the insurer concerning its obligations to the insureds. We, therefore, reverse the decision of the district court and remand this action to the district court for further proceedings consistent with this opinion.
 

 [1]
 

 NRS 687B. 145(2) provides the following:
 

 2. Insurance companies transacting motor vehicle insurance in this state must offer, on a form approved by the commissioner, uninsured and underinsured vehicle coverage in an amount equal to the limits of coverage for bodily injury sold to an insured under a policy of insurance covering the use of a passenger car. The insurer is not required to reoffer the coverage to the insured in any replacement, resinstatement, substitute or amended policy, but the insured may purchase the coverage by requesting it in writing from the insurer. Each renewal must include a copy of the form offering such coverage.
 
 Uninsured and underinsured vehicle coverage must include a provision which enables the insured to recover up to the limits of his [her] own coverage any amount of damages for bodily injury from his [her] insurer which he [she] is legally entitled to recover from the owner or operator of the other vehicle to the extent that those damages exceed the limits of the coverage for bodily injury carried by that owner or operator.
 

 (Emphasis added.)