TEXAS FARMERS INSURANCE COMPANY, Relator,

v.

The Honorable Herbert E. COOPER, Judge of the County Court at Law No. Five of El Paso County, Texas, Respondent.

No. 08–96–00005–CV.

Court of Appeals of Texas, El Paso.

Feb. 15, 1996.

Steven L. Hughes, Mounce & Galatzan, El Paso, for Relator.

W. Reed Leverton, Scruggs & Leverton, P.C., El Paso, for Real Party in Interest.

Herbert E. Cooper, County Court at Law No. Five, El Paso, Pro Se.

Before LARSEN, McCLURE and CHEW, JJ.

### OPINION

LARSEN, Justice.

Texas Farmers Insurance Company brings this mandamus action against the Honorable Herbert Epufemio Cooper, judge of El Paso County Court at Law Number Five. Texas Farmers asks that we mandamus Judge Cooper to abate plaintiff Jack Kidd's extracontractual causes of action pending resolution of Kidd's contract claim for uninsured motorist benefits. Plaintiff has filed all claims in a single lawsuit. For the reasons set forth below, we decline to issue the writ.

### FACTS

Jack Kidd purchased a standard Texas motor vehicle liability insurance policy from Texas Farmers, which included uninsured/underinsured motorist coverage. On April 7, 1993, Kidd was involved in an automobile accident allegedly resulting from the negligence of an uninsured motorist. Kidd made a claim for uninsured motorist benefits under his policy with Farmers. Farmers offered Kidd $5,000 to settle his uninsured motorist claim, which Kidd rejected. Farmers replied to Kidd by re-offering $5,000, whereupon Kidd retained an attorney who wrote Farmers asserting that Farmers' offer

was unreasonably low and unfair, and inadequate to compensate Kidd for his damages. Unable to resolve the dispute, Kidd filed suit against Farmers alleging breach of the insurance contract, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices Act and Texas Insurance Code.[1] The day after filing its original answer, Texas Farmers filed its plea in abatement, asking that all extracontractual claims be stayed pending resolution of the claim for uninsured motorist benefits under the policy. Texas Farmers has not asked for separate trials or a severance at this time, and indeed counsel affirmatively stated at hearing that he was not seeking severance or separate trials. After a hearing on the plea, the trial court refused to abate. Farmers now seeks an order from this Court directing the trial court to abate all Kidd's extracontractual causes of action until final resolution of the contract action for uninsured motorist benefits.

## STANDARD FOR MANDAMUS RELIEF

▅▅▅ Mandamus issues only to correct a clear abuse of discretion or a violation of a duty imposed by law when there is no other adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). An abuse of discretion occurs when the trial court reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker*, 827 S.W.2d at 839; *Dal–Briar Corp. v. Baskette*, 833 S.W.2d 612, 614 (Tex.App.—El Paso 1992) (orig. proceeding). The relator must establish, under the circumstances of the case, that the facts and the law permit the trial court to make but one decision. *Johnson*, 700 S.W.2d at 917; *Progressive County Mut. Ins. Co. v. Parks*, 856 S.W.2d 780, 782 (Tex.App.—El Paso 1993) (orig. proceeding). When a trial judge exercising an otherwise discretionary authority has but one

course to follow and one way to decide, discretionary power is effectively null. *U.S. Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 671 (Tex.App.—Houston [1st Dist.] 1993) (orig. proceeding). Stated conversely, if more than one course of action is open to the trial court, mandamus should not issue.

## STATUS OF THE LAW

In *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987), the Texas Supreme Court recognized the existence of an insurance company's duty to deal fairly and in good faith with its insureds. The breach of that duty gives rise to an action in tort. *Id.* In *Arnold*, the Court said that a contract claim and a claim for breach of the duty of good faith and fair dealing may be tried together "when possible." *Id.* at 168 n. 1. That early footnote is our only guidance from the high court on the subject before us today. The Supreme Court has never created any general prohibition against trying insurance contract cases with their extracontractual counterparts, nor any requirement that these causes of action be severed, nor that the extracontractual claims be abated until the contract claim becomes final. *See id.; Allstate Ins. Co. v. Hunter*, 865 S.W.2d 189, 193 (Tex.App.—Corpus Christi 1993) (orig. proceeding); *Motors Ins. Corp. v. Fashing*, 747 S.W.2d 13 (Tex.App.—El Paso 1988) (orig. proceeding). The Supreme Court has never addressed the inherent conflict that exists in cases where settlement offers are admissible to prove or refute a bad faith claim, but are prohibited in the underlying contract claim.

Since *Arnold*, several courts of appeals have tackled the conundrum of whether separate trials are necessary where settlement offers are relevant and admissible in one action but inadmissable and prejudicial in the other.[2] The intermediate courts are split. The Houston 1st and 14th Courts hold that severance and abatement of extracontractual

---

1. For brevity, we will refer to the good faith and fair dealing, DTPA, and insurance code actions collectively as the "extra contractual claims" or the "bad faith claims."

2. Tex R.Civ.Evid. 408 generally prohibits the introduction of settlement offers or evidence of

negotiations to prove liability or damages. In bad faith insurance claims, however, failure to promptly settle a claim without reasonable basis is the very heart of the cause of action. *Arnold*, 725 S.W.2d at 167.

claims is required from the time a request for separate trials and abatement is filed until such time as all appeals are complete in the contractual claim. *Mid–Century Ins. Co. of Texas v. Lerner*, 901 S.W.2d 749, 753 (Tex.App.—Houston [14th Dist.] 1995) (orig. proceeding); *United States Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 671–72 (Tex.App.— Houston [1st Dist.] 1993) (orig. proceeding); *State Farm Mut. Auto. Ins. Co. v. Wilborn*, 835 S.W.2d 260, 262 (Tex.App.—Houston [14th Dist.] 1992) (orig. proceeding). The Corpus Christi Court of Appeals, in contrast, holds that neither severance nor abatement is necessary; rather an instruction limiting the purposes for which the jury should consider settlement offers is sufficient to protect the rights of all parties. *Allstate Ins. Co. v. Evins*, 894 S.W.2d 847, 850 (Tex.App.—Corpus Christi 1995) (orig. proceeding). This Court has steered a middle course, holding that although separate trials are desirable where evidence of settlement offers is relevant to the extracontractual case, nevertheless there is no reason to require that all activity on the extracontractual claims cease pending final resolution of the contract claim, nor any requirement that the contractual claim be tried first. *Progressive County Mut. Ins. Co. v. Parks*, 856 S.W.2d 776, 780 (Tex.App.—El Paso 1993) (orig. proceeding) ("*Progressive I*"); *Progressive County Mut. Ins. Co. v. Parks*, 856 S.W.2d 780, 782 (Tex. App.—El Paso 1993) (orig. proceeding) ("*Progressive II*"). We wade once again into these muddy waters.

### ABATEMENT: HOW EARLY AND FOR HOW LONG, IF AT ALL?

■ On petition for writ of mandamus, Farmers argues that the trial court abused its discretion by failing to abate the extracontractual causes of action, which under *Wilborn* and *Millard*, it had a legal duty to do.[3] We examine then, the question of whether

the trial court had but one choice when Farmers requested abatement of Kidd's extracontractual claims. Three considerations control such abatement: (1) promoting justice; (2) avoiding prejudice; and (3) promoting judicial economy. *Wilborn*, 835 S.W.2d at 261. We will address the justice and prejudice prongs together, as they are interrelated.

### 1. Promote justice and avoid prejudice.

■ In this Court's *Progressive I*, we held that an order for separate trials was premature where the record made no suggestion that evidence of settlement offers would be offered at trial; we concluded that "[t]he issues and type of evidence can only be determined at a pretrial conference." 856 S.W.2d at 780. Significantly, Farmers' plea in abatement comes almost simultaneously with its answer; there is no whisper of a trial setting in the record here. True, this case differs from *Progressive* in that Kidd's pleadings make clear an unreasonably low settlement offer is a critical element of his bad faith claim; thus, evidence of settlement will be an indispensable part of plaintiff's extracontractual case as it is currently pleaded. Nevertheless, we adhere to our conclusion in *Progressive I* that pretrial conference is an appropriate stage of litigation for determining whether various claims must be abated. We think these cases deserve treatment no different than any other abatement situation; that is, no automatic presumption of harm should arise simply from the joinder of claims that involve different, even conflicting, legal theories. It is and remains movant's burden to shown specifically how it will be prejudiced if abatement is not ordered, and to show concrete evidence of how defending against plaintiff's contract claim clashes with defending against plaintiff's bad faith claims. *See Hunter*, 865 S.W.2d at 194.

---

3. Farmers' argument on mandamus is actually two-fold. First, it argues that the trial court abused its discretion in failing to order separate trials for the contractual and extracontractual causes of action. As we noted above, counsel for Farmers specifically disavowed any request for separate trials at the hearing on his motion; neither did his written motion request separate trials or severance. Mandamus will not issue for any relief not requested in the court below. *See Varkonyi v. Troche*, 802 S.W.2d 63, 64 (Tex. App.—El Paso 1990) (orig. proceeding) (mandamus would not issue to require trial court to enter findings of fact and conclusions of law where record reflected none were requested). We therefore cannot entertain that portion of Farmers' argument in this Court.

█ Moreover, promoting justice and avoiding prejudice should include weighing of factors beyond simply the evidence that will be admissible at trial. The parties' ability to make full, complete discovery, the availability of witnesses and documents, and the expense and delay resulting from an abatement must all be considered by the trial court in determining whether abatement is the best course at any given point in the proceedings. Texas Farmers made no showing on these elements for the trial court's consideration. We must surmise that the insurance company failed to meet its burden on these prongs of the abatement test.

### 2. Judicial economy.

Our third consideration is judicial economy. Relator argues that if the contractual claim is tried first and verdict returned for an amount equal to or less than that offered in settlement, nothing will remain of the extracontractual claims, and the need for a second trial dissipate. *See Republic Ins. Co. v. Stoker,* 903 S.W.2d 338 (Tex.1995). We agree that this is generally, if not universally, true. *Viles v. Security Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex.1990). But even assuming that Texas Farmers prevails on the contract claim (which is certainly not foregone) this is only one aspect of judicial economy. Other features of that consideration weigh against abatement now. For example, as mentioned above, if discovery in the extracontractual case is stayed until the uninsured motorist claim is final, years may pass. Witnesses may die or disappear, files may be lost, and memories will undoubtedly fade. Rather than minimizing pretrial efforts, abatement may require that discovery be conducted twice, as the carrier may successfully argue it initially prepared for trial only on Kidd's contractual claim, not his extracontractual causes. Moreover, it is possible that the entire lawsuit, contractual and extracontractual, is subject to disposition before trial (summary judgment on limitations or dis-

missal for lack of personal jurisdiction may ensue, for two examples). Numerous pretrial rulings may effect both contractual and extracontractual claims.

Thus, refusing to abate may enhance rather than diminish judicial efficiency during pretrial proceedings. Relator has shown nothing at this early stage to persuade us otherwise. We are unable to say with certainty what considerations the trial court had before it when it denied abatement, but we can say that no factor so compelling as to demand abatement has been shown here. We believe trial judges are entitled to deference in managing their dockets, and nothing here leads to the conclusion that the extracontractual portion of this case must be abated immediately to promote judicial efficiency. *See Progressive II,* 856 S.W.2d at 782.

█ We decline to create a presumption of conflict requiring severance or abatement where insurance contract and bad faith actions are joined in one suit. Even where settlement evidence requires separation of contract and bad faith claims, we see no need to create an ironclad rule mandating abatement at any given time. *See Hunter,* 865 S.W.2d at 194. Rather, it is the insurance carrier's burden to prove that it will be prejudiced by conflicts inherent in the continuation of all claims without abatement, and to bring evidence to the trial court on the specifics of those conflicts.[4]

### ONE COURSE TO FOLLOW?

█ Finally, we cannot conclude that the trial court had but one clear course in performing his legal duty. The case law itself gave the judge several avenues to follow, all equally valid. Absent a definitive statement by the Texas Supreme Court or by this intermediate court, the trial court was free to choose which conflicting line of authority it would follow. An abuse of discretion occurs only when the trial court's decision was without reference to guiding principles; where guiding principles of equal authority conflict,

4. Texas Farmers urged at oral argument that it will be prejudiced by the forced disclosure of privileged information should discovery on Kidd's bad faith claim continue unabated. This argument is without support in the mandamus record, which contains nothing but the petition, answer, plea in abatement, hearing on the plea, and order denying abatement. No discovery requests, objections, motions to compel, motions for protective order or *in camera* inspection, or other pleadings relevant to the assertion of privilege are before us. We therefore decline to consider this contention at this time.

we will not second-guess the trial court's choice of one over the other. *Hill v. Lopez,* 858 S.W.2d 563, 566 (Tex.App.—Amarillo 1993) (orig. proceeding).

### *CONCLUSION*

We conclude that where plaintiff is entitled to introduce evidence of settlement negotiations to prove extracontractual claims, those claims should be tried separately from contractual claims in which settlement offers are clearly excludable. Nevertheless, we decline to expand this holding beyond actual trial to include all pretrial proceedings and discovery, much of which may most efficaciously be conducted while the lawsuit remains whole. Moreover, we are mindful of the prejudice that may result to plaintiff if his discovery is abated for the years it may take for a contractual judgment to wend its way through the appellate process, and believe this must be balanced against any prejudice to the insurer.

We therefore hold that although a trial court must try contractual claims separately from extracontractual claims where settlement negotiations are prohibited in the first and critical to the second, that does not mean we will intrude upon the trial court's discretion in deciding at what pretrial stage such separation must occur. There is nothing in this record that requires abatement of extracontractual claims at this time. We deny mandamus relief.