Thomas E. MARTIN, Jr., and
Tami Martin, Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Does I through X and Roe Corporations I through X, Inclusive, Defendants.

CV–S–96–1060–PMP (RLH).

United States District Court,
D. Nevada.

March 24, 1997.

**234**

Jeffrey R. Gomel, Piazza & Associates, Ltd., Las Vegas, NV, for plaintiffs.

John P. Skalak, Pearson and Patton, Las Vegas, NV, for defendants.

## ORDER

PRO, District Judge.

Presently before the Court is Defendant State Farm Mutual Insurance Company's ("State Farm") Motion to Dismiss for Failure to State a Claim (# 5) filed on December 3, 1996. Plaintiffs Thomas E. Martin and Tami Martin ("the Martins") filed an Opposition (# 8) on December 24, 1996. State Farm filed a Reply (# 09) on January 6, 1997. On January 24, 1997, the Martins filed a Supplement (# 10) to their Opposition. On January 31, 1997, State Farm filed a Supplemental Reply (# 12).

## I. Factual Background

On September 9, 1992, Thomas Martin was injured in an accident with an uninsured motor vehicle. The Martins are insured under various State Farm automobile insurance policies which include uninsured motorist ("UM") coverage. The Martins filed a claim for UM benefits under the policies issued to them by State Farm. The Martins allege that State Farm refused to pay the UM coverage, failed to promptly investigate their

claim and made various unfair offers to settle the claim. The Martins filed suit against State Farm for breach of the Martins' UM benefits contract, violations of the Nevada Claims Practices Act, breach of State Farms' duty of good faith and fair dealing, breach of fiduciary duty and intentional infliction of emotional distress.

## II. Standard for a Motion to Dismiss for Failure to State a Claim

 In considering State Farm's Motion to Dismiss, the factual allegations of the Plaintiffs' complaint must be presumed to be true, and this Court must draw all reasonable inferences in favor of the Plaintiffs. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). The issue is not whether Plaintiffs will ultimately prevail, but whether they are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Consequently, the Court may not grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court does not, however, necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in Plaintiffs' Complaint. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

## III. Discussion

 The Nevada Supreme Court has not definitively ruled on the precise issues of fiduciary duty in an insurance contract and whether a bad faith claim is premature if it is brought before the resolution of the underlying contractual claim.[1] While some courts have addressed bad faith and contractual claims together, the Nevada Supreme Court has not specifically dealt with the issues before this Court. In the absence of controlling Nevada law, this Court must use its own

---

1. It is reversible error to proceed with an action that is premature, such a claim should be dismissed without prejudice. *Semenza v. Nevada*

*Med. Liab. Ins. Co.,* 104 Nev. 666, 765 P.2d 184 (1989).

best judgment in determining how the Nevada Supreme Court would decide the substantive issue. *Hart v. Prudential Property and Cas. Ins. Co.*, 848 F.Supp. 900, 901 (D.Nev. 1994).

## A. Breach of Fiduciary Duty

 An insurance contract is a unique contract. It is complex, unilaterally prepared, and rarely fully understood by the insured. *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 858 P.2d 380, 382 (1993). As the parties are not similarly situated, the insurer has the burden of affirmative action. *Id.* When notified of a claim, an insurer must investigate reasonably quickly, consent to a suit against the uninsured, or seek leave to intervene if the insured sues the party at fault for the accident. *Id.* "In short, the insurance company may not ignore its insured and then seek refuge in the fine print of its policy." *Id.* (quoting 2 Alan Widiss, Uninsured and Underinsured Motorist Insurance § 20.3, at 153–54 (2d ed. 1992)).

While an insurance contract is a special contract, Nevada courts have not recognized a fiduciary duty between an insurer and the insured. California law holds that a fiduciary duty between an insurer and an insured does not exist. *Kanne v. Connecticut Gen. Life Ins. Co.*, 607 F.Supp. 899, 908 (D.C.Cal.1985), *vacated on other grounds*, 867 F.2d 489, *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989). While the duty of good faith and fair dealing is fiduciary in nature, it does not create a fiduciary relationship. *Id.* The covenant of good faith and fair dealing does not require that the insurer place the insured's interests above its own as would be the case if the insured were a fiduciary. *Id.* While the special duties of an insurer to the insured resemble the duties owed by a fiduciary, these duties arise due to the unique characteristics of an insurance contract, not because the insurer is a fiduciary. *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1149, 271 Cal.Rptr. 246 (1990).

The Martins cite *Beck v. Farmers Ins. Exch.*, 701 P.2d 795 (Utah 1985), for the proposition that insurers have special duties to the insured. However, in *Beck*, the Utah Supreme Court held that in a first-party insurance contract,[2] there are no reasons to find a fiduciary relationship. *Id.* at 800. In a first-party contract, the insurer and the insured are adversaries. *Id.* at 799. Therefore, the court found that "in a first-party relationship between an insurer and its insured, the duties and obligations of the parties are contractual rather than fiduciary." *Id.* at 800.

This Court finds the reasoning underlying the *Love* and *Beck* cases persuasive. Nevada law has recognized the special contractual relationship of an insurer and an insured. An insurer owes this special duty not only to the person with a disputed claim, but to every other individual covered by its policies. Furthermore, an insurer owes a duty to all insureds to pay only meritorious claims. Since the interests of the insurer and insured can possibly conflict, Nevada courts have never gone so far as to classify the relationship between an insurer and insured as a fiduciary duty. For these reasons, this Court finds that under Nevada law a fiduciary duty between an insurer and insured does not exist.

## B. Breach of the Duty of Good Faith and Fair Dealing

 Nevada law recognizes an implied covenant of good faith and fair dealing in every contract. *Pemberton*, 858 P.2d at 382. An insurer fails to act in good faith when it refuses to compensate the insured for a covered loss. This breach of the good faith and fair dealing covenant constitutes "bad faith" when the relationship of the parties is that of insurer and insured. *Id.*

 An insured may bring a bad faith claim once the insured establishes legal entitlement to an uninsured or underinsured motorist policy and unreasonable conduct by the insurer relating to the insurer's obligations to the insured. *Pemberton*, 858 P.2d at 384. Legal entitlement means that the insured is able to establish fault on the part of the uninsured motorist and the extent of the

---

**2.** A first-party contract is an insurance agreement where the insurer agrees to pay claims submitted to it by the insured for losses suffered by the insured. *Beck*, 701 P.2d at 799 n. 2.

insured's damages. *Id.* This may be proven through settlement or arbitration with the insurer, settlement with the uninsured motorist, or by filing suit against the insurance company. *See Id.* Until the insured has established legal entitlement in such a manner, no claim for bad faith exists. *Id.*[3] In *Pemberton,* the Nevada Supreme Court acknowledged that *judgment* against the tortfeasor was not necessary before an UM policy could proceed, but that "[w]e agree that an insured must demonstrate fault by the tortfeasor and the extent of damages before a claim for bad faith will lie." *Id.*

In *Pulley v. Preferred Risk Mut. Ins. Co.,* 111 Nev. 856, 897 P.2d 1101 (1995), the Nevada Supreme Court also dealt with an insurance coverage contract and bad faith claim. In *Pulley,* the parties arbitrated a dispute about UM benefits. *Id.* 897 P.2d at 1101–02. After the arbitrator issued his decision, the insurer refused to pay benefits. *Id.* 897 P.2d at 1102. The insureds then filed a bad faith denial claim. The district court found that the bad faith claim was barred by res judicata, since it involved the same issues and parties as the arbitration claim. *Id.* 897 P.2d at 1102. The Nevada Supreme Court disagreed, finding that the issues involved in the contract coverage case were not the same as the issues relating to the bad faith claim. *Id.* 897 P.2d at 1103. An insurance coverage case arises in contract, while a bad faith claim arises in tort. *Id.* Most importantly, the court held:

> The district court erred in its conclusion that appellants' action for bad faith existed in April, 1991, when they filed the first case. Rather, the transaction giving rise

to the bad faith tort action did not occur until after the first case for benefits had been settled, i.e., until after Preferred Risk refused to pay the arbitration award.

*Id.*

A review of other jurisdictions' case law involving UM coverage and bad faith claims reveals that a majority of jurisdictions hold that a bad faith claim either does not exist or should be held in abeyance until there is a final resolution of the contractual coverage claim.[4] *See, e.g., Blanchard v. State Farm Mut. Auto. Ins. Co.,* 575 So.2d 1289, 1291 (Fla.1991), (Florida Supreme Court, addressing a split in the district courts, held that a bad faith claim does not accrue before the conclusion of the underlying litigation for contractual UM benefits); *National Sav. Life Ins. Co. v. Dutton,* 419 So.2d 1357, 1362 (Ala.1982), (finding that to make out a prima facie case of bad faith, the evidence must show that the Plaintiff is entitled to a directed verdict on the contract claim, and therefore is entitled to recover on the contract claim as a matter of law); *Lexington Ins. Co. v. Royal Ins. Co. of Am.,* 886 F.Supp. 837, 841–42 (N.D.Fla.1995), (holding a bad faith claim for failure to settle a claim does not arise until there is a final determination of the insurer's liability, claimant's damages and resolution of any appeals).

The Martins cite *Texas Farmers Ins. Co. v. Cooper,* 916 S.W.2d 698 (Ct.App. Of Texas, El Paso 1996) and *Rubio v. State Farm Fire & Cas. Co.,* 662 So.2d 956 (Fla.D.Ct. of App. 1995)[5] for the proposition that contractual and bad faith claims may be tried together.

---

**3.** The Martins allege that State Farm has admitted that the Martins are legally entitled to their contractual claim by tendering $100,000 to the Martins as "undisputed value" on their claim. However, State Farm argues that the Martins have a layered policy, and that the payment represents only the portion of coverage which is not in dispute. State Farm continues to contest the Martins total coverage claim. A plaintiff is not legally entitled to a claim until both the existence and amount of coverage are finally resolved, therefore a directed verdict on the contractual claim is not appropriate at this stage of the proceedings.

**4.** State Far cites this Court to another case in this District in which the Hon. Lloyd D. George,

utilizing similar analysis, determined that a bad faith claim is premature until the underlying contractual claim is finally resolved. *Carter v. State Farm Mut. Ins. Co.,* CV–S–96–142–LDG (RLH).

**5.** The Martins also cite *Pen Coal Corp. v. William H. McGee and Co., Inc.,* 903 F.Supp. 980 (S.D.W.Va.1995) for the proposition that contractual and bad faith claims may be brought at the same time. However, in that case, the West Virginia Court of Appeals had held that a third party may join a bad faith claim and a liability claim as long as the claims were bifurcated. *Id.* at 988–89.

These cases are distinguishable. In *Texas Farmers*, the court of appeals noted that trial and appellate courts in Texas were split on the issue, and that the Texas Supreme Court had not entered a definitive ruling. 916 S.W.2d at 701. The court went on to analyze abatement of the extra contractual causes of action, looking at the factors of: 1) promoting justice, 2) avoiding prejudice, and 3) promoting judicial economy. The court found that these factors did not warrant abatement.

Additionally, in *Texas Farmers*, the Plaintiffs were seeking a writ of mandamus. In order to grant a writ, the appellate court had to find that the law and facts permitted the trial court to make only one decision. 916 S.W.2d at 700. The appellate court found that case law in Texas gave the trial court "several avenues to follow, all equally valid." *Id.* at 702. Since guiding principles of equal authority conflicted, the court would not second-guess the trial court's choice of one theory over the other. *Id.* at 702–03. In *Rubio*, another abatement case, joinder of the bad faith claim was provided for by statute. 662 So.2d at 959. Furthermore, Florida case law supported the joinder. *Id.*

Unlike *Texas Farmers* and *Rubio*, while the Nevada Supreme Court has not directly addressed the issue, it has held that bad faith claims are separate and distinct causes of action, and that "the transaction giving rise to [a] bad faith tort action [does] not occur until after the first case for benefits under the contract [has] been settled." *Pulley*, 897 P.2d at 1103. There is also no apparent conflict among Nevada state courts nor any statute authorizing joinder of contractual coverage and bad faith claims. Additionally, this Court's analysis is not based on prejudice to the parties or judicial economy as was the case in *Texas Farmers*. Rather, the key issue is when the cause of action for bad faith accrues. While other jurisdictions may hold differently, Nevada law has clearly addressed this point, and this Court is bound by that decision.

## C. Intentional Infliction of Emotional Distress and Nevada Unfair Claims Practices Act.

As the Martins acknowledge in their Opposition, the claims under the Nevada Unfair Claims Practices Act and for Intentional Infliction of Emotional Distress should be tried with the bad faith claim, since they are all based on the same alleged unreasonable conduct. (Plaintiff's Opposition p. 9 n. 4). Furthermore, the reckless or intentional conduct necessary to support these claims will depend on the factual determination of whether the Martins were fully covered by their agreement with State Farm. These issues will be more appropriately resolved once the contract claim is finally resolved.[6] Therefore, this Court dismisses these claims without prejudice as well.

IT IS THEREFORE ORDERED THAT Defendant's Motion to Dismiss for Failure to State a Claim (# 5) is GRANTED as to the Plaintiffs' claims for violations of the Nevada Unfair Practices Act (third cause of action), Breach of the covenant of good faith and fair dealing (fourth cause of action) and intentional infliction of emotional distress (fifth cause of action). These claims are dismissed without prejudice.

IT IS FURTHER ORDERED THAT Defendant's Motion to Dismiss Plaintiff's claim of breach of fiduciary duty (second cause of action) is GRANTED. This claim is dismissed with prejudice.

THEREFORE, this Court will proceed with Plaintiff's remaining contractual claim for Defendant's failure to pay Plaintiff's uninsured motorist benefits (first cause of action).

---

6. Defendant's also request that this Court bifurcate discovery as to the contractual and extra contractual claims. However, this is unnecessary, as only discovery regarding the contractual claim will proceed upon issuance of this Court's Order.