James **DRENNAN** and Bobbie Jean Drennan, Plaintiffs,

v.

**MARYLAND CASUALTY COMPANY, a Maryland Corporation, d/b/a Zurich American Insurance Company and/or Zurich American of Illinois; Does 1 through 10, inclusive; and Roe Corporations 1 through 10, inclusive, Defendant.**

No. CVS040990PMPPAL.

United States District Court, D. Nevada.

April 25, 2005.

William J. Brim, Esq., Koch & Brim, Marjorie L. Hauf, Esq., Vannah Costello Vannah & Ganz, Las Vegas, NV, for Plaintiffs.

Nathan Reinmiller, Esq., Alverson Taylor Mortensen & Sanders, Las Vegas, NV, for Defendant.

## ORDER

PRO, Chief Judge.

Presently before this Court is Defendant's Motion to Dismiss Plaintiff's Bad Faith Claim, Pursuant to N.R.C.P. 12(b)(5), for Failure to State a Claim for Which Relief Can be Granted (Doc. # 14), filed on November 16, 2004. Plaintiffs James Drennan and Bobbie Jean Drennan

filed their Opposition to Defendants' Motion to Dismiss Plaintiffs' Bad Faith Claim Pursuant to NRCP 12(b)(5), for Failure to State a Claim for Which Relief Can be Granted (Doc. # 15) on December 2, 2004. Defendants filed Defendant's Reply in Support of Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(6) (Doc. # 16) on December 13, 2004.

## I. BACKGROUND

Defendant Maryland Casualty Company ("Maryland Casualty") is an insurance business incorporated in the state of Maryland with a principal place of business in Maryland. (Notice of Removal of Action ¶ 3.) Plaintiff James Drennan ("Drennan") is a resident of Nevada, and was at all relevant times employed by Small Carpentry Projects. (Compl.¶¶ 1, 6.) Drennan alleges that on August 2, 2002, he drove a vehicle owned by his employer eastbound on Warm Springs near Commercial Way in Las Vegas, Nevada. (*Id.* ¶ 6.) According to Drennan, Hector Alvarez ("Alvarez"), driving a vehicle owned by his employer GDS Services, failed to stop at a stop sign and collided with Drennan. (*Id.*) Drennan filed a lawsuit, and GDS Services, along with Alvarez, settled the lawsuit within the single-limit liability insurance policy limits. (*Id.* ¶ 7.) Maryland Casualty, who insures Small Carpentry Projects, approved the settlement. (*Id.*) Underinsured Motorist Coverage ("UIM") is generally available to policyholders to allow for additional compensation in case a tortfeasor's insurance coverage is not sufficient to compensate the policyholder's damages. The Drennans believed initially that their damages would not exceed the amount needed to trigger the one million dollars in UIM coverage. (Opp'n to Def.'s Mot. to Dismiss Pl.'s Bad Faith Claim, Pursuant to NRCP 12(b)(5), for Failure to State a Claim for Which Relief can be Granted, Ex. 6.) However, the Drennans informed Maryland Casualty that damages were significantly higher than expected, and that the UIM coverage would be implicated. (*Id.*, Ex. 7.) On February 10, 2004, Plaintiffs formally demanded Maryland Casualty to pay the UIM limits. (*Id.*, Ex. 8.) Maryland Casualty claimed that it could not review the file within thirty days; so it requested and received from Plaintiffs a forty-five day extension to evaluate the UIM claims. (*Id.*, Ex. 9.)

On March 25, 2004, Maryland Casualty's California-based adjuster offered to settle the claims for $256,249.40, claiming that Maryland Casualty was entitled to an offset in the amount of the tortfeasors' bodily injury settlement. (*Id.*, Ex. 10.) Plaintiffs disputed the basis for Maryland Casualty's claim for an offset, but requested payment of the $256,249.40 that Maryland Casualty offered. (*Id.*) Plaintiffs allege that since that time, Maryland Casualty has not paid any of the money allegedly offered to Plaintiffs by Maryland Casualty. (*Id.*) Further, Plaintiffs allege that Maryland Casualty has not confirmed the UIM coverage limit. (*Id.*)

On May 25, 2004, Plaintiffs filed suit in the Eighth Judicial District in Clark County, Nevada, alleging claims of breach of contract, breach of the covenant of good faith and fair dealing, and unfair claims practices. Maryland Casualty removed this action to this Court on July 16, 2004, based on diversity jurisdiction. Maryland Casualty now moves to dismiss Plaintiffs' bad faith claim arguing that Plaintiffs have not yet established legal entitlement to UIM benefits under Nevada law.

## II. LEGAL STANDARD

In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party."

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.,* 135 F.3d 658, 661 (9th Cir.1998) (citation omitted). However, the court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. *See Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir.1994). There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997) (citation omitted). " 'The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims.' " *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Hicks v. Small,* 69 F.3d 967, 969 (9th Cir.1995).

The liberal rules of notice pleading set forth in the Federal Rules of Civil Procedure generally do not require a plaintiff to set out in detail the facts supporting his claim. *See* Fed.R.Civ.P. 8; *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). All the Rules require is " 'a short and plain statement' " that adequately " 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992 (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99). Therefore, a plaintiff merely must plead sufficiently to "establish a basis for judgment against the defendant." *Yamaguchi v. United States*

*Dep't of the Air Force,* 109 F.3d 1475, 1481 (9th Cir.1997) (citations omitted). Further, a claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief. *See United States v. Howell,* 318 F.2d 162, 166 (9th Cir.1963).

## III. DISCUSSION

### A. Bad Faith

Maryland Casualty contends Plaintiffs fail to state a claim for which relief can be granted because Plaintiffs have not established legal entitlement to payment under their UIM coverage, which is required to state a claim for bad faith. According to Maryland Casualty, Plaintiffs failed to establish either tortfeasor fault or the extent of damages, both of which are necessary to establish legal entitlement. Plaintiffs respond that final resolution regarding the breach of insurance contract claim is not necessary to bring a bad faith claim. Plaintiffs further argue that they have established legal entitlement to payment under their UIM coverage.

Nevada law recognizes an implied covenant of good faith and fair dealing in every contract. *Pemberton v. Farmers Ins. Exch.,* 109 Nev. 789, 858 P.2d 380, 382 (1993). An insurer fails to act in good faith when it refuses to compensate the insured for a covered loss. *Id.* This breach of the good faith and fair dealing covenant constitutes bad faith when the relationship of the parties is that of insurer and insured. *Id.* An insured may institute a bad faith action against his or her insurer once the insured establishes "legal entitlement" to an uninsured or underinsured motorist policy and unreasonable conduct by the insurer concerning its obligations to the insureds. *Id.* at 384. "Legal entitlement" means that the in-

sured is able to establish fault on the part of the uninsured motorist and the extent of the insured's damages. *Id.* However, an insured is not required to obtain a judgment against the tortfeasor before he is entitled to receive proceeds under a UIM policy. *Id.*

Nevada law does not specify how an insured must establish fault on the part of the uninsured motorist as well as the extent of the insured's damages. In the absence of controlling Nevada law, this Court must use its own best judgment in determining how the Nevada Supreme Court would decide the substantive issue. *Burlington Ins. Co. v. Oceanic Design & Constr., Inc.,* 383 F.3d 940, 944 (9th Cir. 2004). In performing that function, the Court may be aided by reviewing well-reasoned decisions from other jurisdictions. *Id.*

This Court initially addressed this issue in *Martin v. State Farm Mut. Automobile Ins. Co.,* 960 F.Supp. 233 (D.Nev.1997). In *Martin,* the Court noted that a review of other jurisdictions' case law involving UIM coverage and bad faith claims reveals that many jurisdictions hold that a bad faith claim either does not exist or should be held in abeyance until there is a final resolution of the contractual coverage claim. *See, e.g., Blanchard v. State Farm Mut. Auto. Ins. Co.,* 575 So.2d 1289, 1291 (Fla.1991) (a bad faith claim does not accrue before the conclusion of the underlying litigation for contractual UIM benefits); *National Sav. Life Ins. Co. v. Dutton,* 419 So.2d 1357, 1362 (Ala. 1982) (finding that to make out a prima facie case of bad faith, the evidence must show that the plaintiff is entitled to a directed verdict on the contract claim, and therefore is entitled to recover on the contract claim as a matter of law); *Lexington Ins. Co. v. Royal Ins. Co. of Am.,* 886 F.Supp. 837, 841–42 (N.D.Fla.1995)

(holding a bad faith claim does not arise until there is a final determination of the insurer's liability, claimant's damages and resolution of any appeals). Based on this survey, this Court held that the plaintiff failed to state a cause of action for bad faith because the cause of action did not accrue until the contract claim is resolved. *Martin,* 960 F.Supp. at 237. However, "legal entitlement" also has been interpreted by other jurisdictions to require that the insured establish that the insurer receive sufficient facts which fully apprise the insurer that the tortfeasor was uninsured or underinsured, and establish the extent of those damages. *Hart v. Allstate Ins. Co.,* 437 So.2d 823, 828 (La.1983).

Since this Court's ruling in *Martin,* the Nevada Supreme Court has held that a plaintiff need not establish he is entitled to a directed verdict on the contractual claim to establish a prima facie bad faith claim. *Albert H. Wohlers & Co. v. Bartgis,* 114 Nev. 1249, 969 P.2d 949, 955 n. 2 (1999). In so holding, the Nevada Supreme Court expressly declined to adopt the directed verdict rule articulated in *Dutton. Id.* This intervening authority undermines the persuasive authority of *Martin,* and prompted this Court to review *Martin* in its entirety. .

In reviewing *Martin,* this Court cited *Pemberton* for the proposition that a plaintiff may establish "legal entitlement" in three ways: (1) settlement or arbitration with the insurer; (2) settlement with the uninsured motorist; or (3) by filing a lawsuit against the insurance company. *Martin,* 960 F.Supp. at 236. However, Nevada law has not expressly approved any of these methods to establish legal entitlement. *Pemberton,* which discusses *Allstate Ins. Co. v. Pietrosh,* 85 Nev. 310, 454 P.2d 106, 110 (1969), merely provided what options are available for an insured who is legally entitled to recover damages from

the owner or operator of an uninsured vehicle. *Pemberton*, 858 P.2d at 384. It did not affirmatively require, as a matter of law, that these are the only ways a plaintiff must establish legal entitlement.

Second, *Martin* cited *Pulley v. Preferred Risk Mut. Ins. Co.*, 111 Nev. 856, 897 P.2d 1101 (1995) for the notion that "the transaction giving rise to a bad faith tort action does not occur until after the first case for benefits under the contract has been settled." *Martin*, 960 F.Supp. at 237. In *Pulley,* the facts upon which the bad faith claim was based did not occur until after the coverage claim was resolved. *Pulley,* 897 P.2d at 1101. To thereafter substitute the verb "does" for "did" in the passages alters its meaning from a statement of operative fact to a rule of law.

██ This Court therefore finds that Nevada law does not require Plaintiffs to establish tortfeasor liability or the extent of damages as a matter of law prior to instituting a claim for bad faith. To find otherwise would require Plaintiffs to commence two separate suits even if the facts establish that Maryland Casualty breached the insurance contract and acted in bad faith within the same factual sequence. This would result in a waste of judicial resources when the parties otherwise could conduct discovery on both issues simultaneously. This finding does not contravene the well-accepted notion that a finding that Maryland Casualty did not breach the insurance contract would preclude Plaintiffs' recovery for bad faith. Plaintiffs are required to allege only that the tortfeasor was uninsured, the extent of damages, and that Maryland Casualty failed to act in good faith when it refused to compensate the Plaintiffs. Plaintiffs have satisfied this requirement in their Complaint. Plaintiffs' Complaint alleges that the accident occurred due to the actions of an unin-

sured motorist, that the damages exceeded the limits of the UIM policy, and that Maryland Casualty refused to pay the claim absent any reasonable basis. Plaintiffs thus have stated a claim for bad faith. (*See* Compl. ¶¶ 6–10.) The Court therefore will not dismiss Maryland Casualty's Motion to Dismiss Plaintiffs' bad faith claim.

## B. Bifurcation

In the alternative, Maryland Casualty moves that the Court bifurcate the bad faith claims for discovery as well as for trial. Plaintiffs respond that bifurcation is appropriate only if the bad faith claims were premature.

██ Rule 42(b) of the Federal Rules of Civil Procedure authorizes the court to order a separate trial of any claim when separation is the interest of judicial economy, will further the parties' convenience, or will prevent undue prejudice. Fed. R.Civ.P. 42(b). The decision to bifurcate is committed to the sound discretion of the trial court. *Hirst v. Gertzen,* 676 F.2d 1252, 1261 (9th Cir.1982). Bifurcation is particularly appropriate when resolution of a single claim or issue could be dispositive of the entire case. *See O'Malley v. United States Fidelity and Guaranty Co.,* 776 F.2d 494, 501 (5th Cir.1985) (bifurcation was proper when resolution of breach of insurance contract claim effectively disposed of plaintiff's bad faith claim against insurance company). However, bifurcation of the trial does not necessarily require bifurcation of discovery. *See Foseco, Inc. v. Consol. Aluminum Corp.,* 851 F.Supp. 369, 371 (E.D.Mo.1991).

██ Bifurcating the breach of insurance contract claim from the bad faith claim is appropriate in this case. If Plaintiffs do not prevail on their breach of insurance contract claim, there can be no basis for

concluding that Maryland Casualty acted in bad faith. Consequently, a favorable finding for Maryland Casualty on this issue would eliminate the need for a second trial. Bifurcation thus would further the interest of expedient resolution of litigation. Further, bifurcation would simplify the issues for trial and reduce the possibility of undue prejudice by allowing the jury to hear evidence of bad faith only upon establishing that Maryland Casualty breached the insurance contract. The Court therefore finds that any trial regarding the breach of contract claim shall be bifurcated from the bad faith claim.

 The Court further finds that bifurcation of discovery is not warranted in this case. Joint discovery is more convenient to the parties and would further judicial economy. With joint discovery, the parties will be better informed with regard to settlement efforts. Moreover, any discovery disputes likely will pertain to both causes of action. Finally, joint discovery will expedite resolution of the entire matter by permitting the second trial, if necessary, to commence immediately after the first.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Plaintiff's Bad Faith Claim, pursuant to N.R.C.P. 12(b)(5), for Failure to State a Claim for which Relief Can be Granted (Doc. # 14) is hereby DENIED.

IT IS FURTHER ORDERED that the trial of Plaintiffs' breach of contract claim shall be bifurcated from their bad faith claim; and, that the trial of the breach of contract claim shall proceed first, with the trial of bad faith claim, if necessary, commencing immediately thereafter.

IT IS FURTHER ORDERED that discovery of all claims shall proceed jointly.